**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAVID L. de CSEPEL,** *et al.* | ) |
| | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **No. 1:10-cv-01261(ESH)** |
| | ) |
| **REPUBLIC OF HUNGARY,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |

## <u>PLAINTIFFS' NOTICE OF EFFORTS TO COMPLETE SERVICE OF PROCESS</u>

Pursuant to this Court's Order dated November 3, 2010 [Dkt. No. 2], Plaintiffs hereby respectfully update the Court concerning Plaintiffs' efforts to complete service of process on the Defendants.  As explained below, Plaintiffs have completed all components of service of process under the Hague Convention that are within their control and will file proof of service with the Court when the administrative process that is currently in the hands of the Hungarian Central Authority is complete.

**A.    The Hague Convention Authorizes Service On**
**<u>Defendants Via The Hungarian Central Authority.</u>**

1.    Plaintiffs commenced this action on July 27, 2010 by filing the Complaint against Defendants Republic of Hungary, the Hungarian National Gallery, the Museum of Fine Arts, the Museum of Applied Arts and the Budapest University of Technology and Economics (together, "Defendants").  Because each of the Defendants is a "foreign state" or an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603 (*see* Compl. ¶¶ 9-14), Plaintiffs are required to serve Defendants in accordance with 28 U.S.C. § 1608.  *See* Fed. R. Civ. P.

4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608.").

2.      Section 1608 provides that, in the absence of a special arrangement between the parties, service shall be made upon a foreign state or an agency or instrumentality of a foreign state by "delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(2); *see also* 28 U.S.C. § 1608(b)(2).  In this case, the "applicable international convention" is the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163 (1969) (the "Hague Convention"), to which both Hungary and the United States are signatories.

3.      The Hague Convention provides several channels by which service may be effected upon defendants in member nations, including service through the foreign Central Authority, service by diplomat, service by mail, and service by private agent.  Upon ratification of the Hague Convention, Hungary objected, under Article 21 of the Hague Convention, to the use of all methods of service except service through its Central Authority.  The practical effect of Hungary's declarations and reservations is to render it legally impossible to serve documents in Hungary except through the channel of the Hungarian Central Authority.

4.      To effect service through the Central Authority, a plaintiff must send a request for service to that Authority.  Hague Convention, arts. 2, 3.  The request must follow the model format annexed to the Hague Convention and must include copies of the documents to be served. *Id.*, art. 3.  If the Central Authority "considers that the request does not comply with the provisions of the present Convention [,] it shall promptly inform the applicant and specify its objections to the request."  *Id.*, art. 4.  Otherwise, the Central Authority must effectuate service

on the party named by the method indicated in the request.  *Id.*, art. 5.  The Central Authority "may require the document [to be served] to be written in, or translated into, the official language or one of the official languages of the State addressed."  *Id.*, arts. 5, 7.  Hungary has such a translation requirement.  *See* Hague Conference on Private International Law, Hungary, Central Authority and Practical Information, Translation Requirements, *available at*, http://hcch.e-vision.nl/index_en.php?act=authorities.details&aid=673 (last visited November 23, 2010).  The Hague Convention does not impose any time limit on the Central Authority to effect service.

**B.**     **Plaintiffs Have Diligently Attempted To Complete Service Under The Hague Convention And Have Completed All Steps In Their Control.**

5.        Since the filing of Complaint, Plaintiffs have diligently attempted to complete service on Defendants and have completed all steps in that process that are within their control.

6.        Immediately following the filing of the Complaint, Plaintiffs retained Legal Language Services ("LLS"), an international litigation support firm, to translate the Summonses and the Complaint into Hungarian and to serve them in accordance with the Hague Convention.

7.        On September 17, 2010, LLS transmitted the translated Summonses and Complaints and accompanying documents via Fedex to the Hungarian Ministry of Public Administration and Justice, which is Hungary's designated Central Authority to receive service of process under the Hague Convention.  *See* Declaration of Hungary to Article 2 of the Hague Convention, *available at*, http://hcch.evision.nl/index_en.php?act=authorities.details&aid=673 (last visited November 23, 2010).

8.        On October 1, 2010, LLS received a faxed letter from the Hungarian Central Authority, acknowledging receipt of the five Hague service requests.  (A copy of the October 1, 2010 letter is attached hereto as Exhibit A.)  The letter requested that LLS provide verification that it was authorized to serve judicial process under the Hague Convention.

9.      LLS prepared the requested documentation, and faxed it to the Hungarian Central Authority on October 5, 2010.  (A copy of LLS's October 5, 2010 letter is attached hereto as Exhibit B.)

10.     On October 12, 2010, the Hungarian Central Authority sent additional correspondence challenging LLS's authority to serve under the Hague Convention and indicating that it had contacted the U.S. Department of Justice (as the U.S. Central Authority for the Hague Convention) to obtain clarification.  LLS responded promptly in an effort to resolve the Hungarian Central Authority's concerns.  (A copy of the October 12, 2010 email and LLS's response is attached hereto as Exhibit C.)

11.     On October 28, 2010, LLS received a faxed letter from the Hungarian Central Authority stating that its concerns regarding LLS's authority to serve had been resolved and that it would "now proceed to serve the documents in conformity with domestic rules on service of judicial documents."  (A copy of the October 28, 2010 letter is attached hereto as Exhibit D.)

12.     On November 2, 2010, LLS received an email from the Hungarian Central Authority confirming that "we are going to inform you on the outcome of your requests for service with regard to each defendant separately."  (A copy of the November 2, 2010 email is attached hereto as Exhibit E.)

13.     On November 19, 2010, in response to LLS's request for an update concerning the status of service, the Hungarian Central Authority advised that "[t]o date we have not received information from the competent court on any of the 5 cases.  As soon as we receive the documents certifying the date of service we will send you those as well as the certificate provided for by the Hague Convention."  (A copy of the November 19, 2010 email is attached hereto as Exhibit F.)  The reference to the "competent court" is to the Hungarian court with

4

jurisdiction over the service requests under the Hague Convention to which the Hungarian

Central Authority provided the requests for service.

14.     The foregoing correspondence establishes that the process of Hague Convention

service against the Defendants is well underway in Hungary and is in the hands of the Hungarian

Central Authority and the Hungarian judicial system.  Plaintiffs will continue to request status

updates from the Hungarian Central Authority and propose to provide the Court with a further

update by January 31, 2011 if service has not yet been completed.

**C.     The 120-Day Deadline Set Forth In Fed. R. Civ. P. 4(m) Does
Not Apply Here Because Service Is Being Made On A Foreign State
And Its Agencies And Instrumentalities Under Fed. R. Civ. P. 4(j)(1).**

15.     Because Defendants are a foreign state and agencies or instrumentalities of a

foreign state who must be served in accordance with 28 U.S.C. § 1608, and because Hungary has

objected under the Convention to alternate channels of service provided by Article 10, the 120-

day deadline for completion of service of process set forth in Federal Rule of Civil Procedure

4(m) does not apply.  *See* Fed. R. Civ. P. 4(m) ("This subdivision (m) does not apply to service

in a foreign country under . . . 4(j)(1)"); *Nylok Corp. v. Fastener World, Inc.*, 396 F.3d 805, 806-

07 (7th Cir. 2005) (120-day time limit not applicable to service on defendants in Taiwan and

Korea); *Frederick v. Hydro-Aluminum S.A.*, 153 F.R.D. 120, 124-26 (E.D. Mich. 1993) (plaintiff

serving in Germany pursuant to the Hague Convention was exempt from 120-day rule).  The

rationale for the exemption from the rule is that "the timeliness of foreign service is often out of

the plaintiff's control."  *Nylok*, 396 F.3d at 806.

16.     In the absence of the 120-day limit of Rule 4(m), courts generally apply a

"flexible due diligence" standard for determining whether service of process on a foreign

defendant was timely.  *See Overseas Partners, Inc. v. Progen Musavirlik Ve Yonetim Hizmetleri Ltd.*, 15 F. Supp. 2d 47, 49 (D.D.C. 1998).

17.     Here, Plaintiffs have acted diligently to serve Defendants in accordance with the Hague Convention within the 120-day period.  However, service will not be completed until the Hungarian authorities complete the relevant procedures under Hungarian law and provide Plaintiffs with notification that service has been accomplished.

18.     Because any delay in completing service is out of Plaintiffs' control (and will not prejudice Defendants in any event)[1] this Court should refrain from taking any action to dismiss the Complaint at this time.  *See Nylok Corp.*, 396 F.3d at 806-07 (holding that district court should not have dismissed claims where plaintiff made every effort to serve defendants in a timely manner by hiring service agency to prepare appropriate materials and send them to authorized agencies in Taiwan and Korea and was then required to wait for those agencies to forward materials to judicial authorities who would then serve defendants); *Frederick*, 153 F.R.D. at 126 (holding that even if 120 day limited applied, delay in service could be excused for good cause where plaintiffs were obligated, *inter alia*, to contact the German Central Authority and to obtain translations and the assistance of an international process server in order to effectuate service).

---

[1] Plaintiffs note that Defendant Republic of Hungary has apparently received notice of the Complaint as it has publicly commented on the lawsuit and has recently sought to have this action included in a proposed MDL proceeding.  *See* Memorandum Of Law Of The Republic Of Hungary And Mav Zrt. In Support Of Motion For Transfer And Consolidation Of Related Actions To The United States District Court For The District Of Columbia For Coordinated And Consolidated Pretrial Proceedings, filed in *In re Hungarian Holocaust Litigation* (MDL No. 2207), [Dkt No. 15] (attached hereto as Exhibit G).  Plaintiffs have placed the Panel on notice of their objection to the inclusion of this action in the MDL (*see* MDL No. 2207, [Dkt. No. 14] (attached hereto as Exhibit H)).

WHEREFORE, Plaintiffs respectfully request that this Court permit Plaintiffs to provide a further update concerning the status of service of process by January 31, 2011.

Respectfully submitted,

_/s/ Michael D. Hays_

Michael D. Hays (D.C. Bar No. 932418)
Daniel D. Prichard (D.C. Bar No. 476449)
DOW LOHNES PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, D.C.  20036-6802
Tel:  (202) 776-2000
Fax:  (202) 776-2222
mhays@dowlohnes.com
dprichard@dowlohnes.com
*Counsel For Plaintiffs*

Of Counsel:

Michael S. Shuster
Sheron Korpus
Alycia Regan Benenati
Dorit Ungar
KASOWITZ BENSON TORRES &
     FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
mshuster@kasowitz.com
skorpus@kasowitz.com
abenenati@kasowitz.com
dungar@kasowitz.com

Dated:  November 29, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November 2010, I caused the foregoing

Plaintiffs' Notice Of Efforts To Complete Service Of Process to be electronically filed using the

CM/ECF system and served via United States Mail on the following defendants at the addresses

listed below:

> Republic Of Hungary
> c/o Magyar Nemzeti Vagyonkezelő Zrt.
> 1399 Budapest, Pf. 708, Hungary
>
> Hungarian National Gallery
> Buda Palace, Buildings A, B, C, D,
> Szent György tér 2,
> 1014 Budapest, Hungary
>
> Museum Of Fine Arts
> Dózsa György út 41,
> 1146 Budapest Pf. 463,
> H-1396 Budapest 62, Hungary
>
> Museum Of Applied Arts
> Üllői út 33-37,
> 1091 Budapest, Hungary
>
> Budapest University Of Technology And Economics
> Műegyetem rkp. 3-9,
> H-1111 Budapest, Hungary

A copy of the foregoing has also been sent via United States Mail to:

> Dr. Szabolcs Boreczki
> Ministry of Public Administration and Justice
> of the Republic of Hungary
> Department of Judicial Cooperation and Private International Law
> H-1363 Budapest, Pf. 54, Hungary

> /s/ Michael D. Hays
> Michael D. Hays