Rep. Alcee L. Hastings, *Florida*
Chairman

Sen. Benjamin L. Cardin, *Maryland*
Co-Chairman

Rep. Louise McIntosh Slaughter, *New York*
Rep. Mike McIntyre, *North Carolina*
Rep. Hilda L. Solis, *California*
Rep. G. K. Butterfield, *North Carolina*
Rep. Christopher H. Smith, *New Jersey*
Rep. Robert B. Aderholt, *Alabama*
Rep. Joseph R. Pitts, *Pennsylvania*
Rep. Mike Pence, *Indiana*

Fred L. Turner, Chief of Staff



Sen. Russell D. Feingold, *Wisconsin*
Sen. Christopher J. Dodd, *Connecticut*
Sen. Hillary Rodham Clinton, *New York*
Sen. John F. Kerry, *Massachusetts*
Sen. Sam Brownback, *Kansas*
Sen. Gordon H. Smith, *Oregon*
Sen. Saxby Chambliss, *Georgia*
Sen. Richard Burr, *North Carolina*

January 8, 2008

H.E. Dr. Kinga Göncz
Minister of Foreign Affairs
1027 Budapest, Bem rkp. 47.
Hungary

Dear Minister Göncz:

Thank you for your response, dated November 30, 2007, to our letter of September 17, 2007, regarding the efforts of Martha Nierenberg to regain artwork stolen from her family during the Holocaust and now held by Hungary.

We take this opportunity to correct some information presented in your letter.

You indicated that Martha Nierenberg's mother, Elizabeth Weiss de Csepel, had received $210,000 as compensation in full for the artwork in question. This is incorrect. In 1959, the Foreign Claims Settlement Commission of the United States placed the value of Elizabeth Weiss de Csepel's interest in 12 specific works of art confiscated by the Hungarian Government at $210,000. The total amount of the actual payment made to Elizabeth Weiss de Csepel for that artwork *and* for real property confiscated by the Hungarian Government in 1954 was only $169,827.

In addition, the 1959 award *explicitly* states that "[p]ayment of any part of this award shall not be construed to have divested the claimant herein, or the Government of the United States on her behalf, of any rights against the Government of Hungary for the unpaid balance of the claim . . ."

More to the point, the Foreign Claims Settlement Commission excluded from its award decision any claims from Elizabeth Weiss de Csepel for real property or artwork not "compulsorily liquidated or otherwise taken between June 23, 1952, the date claimant became a national of the United States, and August 9, 1955, the date set forth in the statute before which a taking must have occurred in order to give rise to a compensable claim under section 303 (2)." (Decision No. HUNG-2079 of the Foreign Claims Settlement Commission of the United States.)

In other words, the paintings sought by Martha Nierenberg were not covered at all by the 1959 decision of the Foreign Claims Settlement Commission because Elizabeth Weiss de Csepel

EXHIBIT D

H.E. Dr. Kinga Göncz
Page 2 of 2
January 8, 2008

was not a U.S. citizen at the time those paintings were stolen, and because the paintings were not considered "nationalized, compulsorily liquidated or taken" as those terms are used in the statute governing the work of the Foreign Claims Settlement Commission.

Madam Minister, it is not our intention to interfere with the independence of the judiciary in Hungary. It is, however, very much our desire to see justice done. In this particular case, the government of Hungary is a party to the dispute in question and we believe it is completely appropriate to encourage your government to take those steps that are within its powers to take and which would undo one of the wrongs of the Holocaust.

In this regard, we are troubled by your assertion that the statute of limitations has lapsed regarding Ms. Nierenberg's claim to six of the paintings in question. The record clearly demonstrates that Martha Nierenberg and her mother before her have been seeking a full return of their family's stolen artwork for more than 50 years. Is it truly your personal view and the view of your government that Ms. Nierenberg's family should have expected a good-faith resolution of this matter *from the totalitarian communist regime?* If so, in precisely what year could one have expected legal justice from the People's Republic of Hungary?

We understand that Hungarian courts will revisit this issue within the coming days. Regardless of the outcome of the next phase of legal proceedings, we are confident that the courts will not issue a legal prohibition on the Hungarian Government's discretionary power to return these paintings. Why would the Hungarian Government insist on retaining custody of artwork stolen by the Nazis, when it could return it to the rightful owner? Whether a court actually orders the return of these paintings or not, we urge your government to return to Ms. Nierenberg without further delay the paintings that were stolen from her family.

Sincerely,

ALCEE L. HASTINGS, M.C.
Chairman

BENJAMIN L. CARDIN, U.S.S.
Co-Chairman

HILLARY RODHAM CLINTON, U.S.S.
Commissioner

EXHIBIT D