

1 of 12 DOCUMENTS

**HOLOCAUST VICTIMS OF BANK THEFT, Plaintiffs, v. MAGYAR NEMZETI BANK, et. al., Defendants.**

No. 10 C 1884

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2011 U.S. Dist. LEXIS 54293*

**May 18, 2011, Decided
May 18, 2011, Filed**

**COUNSEL:** [*1] For Holocaust Victims of Bank Theft, Plaintiff: Anthony Alfred D'amato, LEAD ATTORNEY, Northwestern, Chicago, IL; Robert James Pavich, LEAD ATTORNEY, John J. Pavich, Monico, Pavich & Spevack, Chicago, IL; George K Lang, Jeffrey A. Leon, Freed & Weiss LLC, Chicago, IL; Richard H. Weisberg, Cardoza Law School, New York City, NY.

For Magyar Nemzeti Bank, Defendant: Anthony L. Paccione, Jonathan J. Faust, PRO HAC VICE, Katten Muchin Rosenman Llp, New York, NY; Brian J. Poronsky, Christian T. Kemnitz, Katten Muchin Rosenman LLP, Chicago, IL.

For Erste Group Bank, Defendant: Alan M. Kanzer, Amber C. Wessels, PRO HAC VICE, Alston & Bird, LLP-NY, New York, NY; Sharon Renae Albrecht, Steven L. Baron, Mandell Menkes LLC, Chicago, IL.

For MKB Bayerische Landesbank, Defendant: Justin Adam Mccarty, Tyrone C. Fahner, Mayer Brown LLP, Chicago, IL.

For OTP Bank, Defendant: Gregory L. Stelzer, James R. Figliulo, Figliulo & Silverman, Chicago, IL; Laina Catherine Wilk Lopez, Thomas G. Corcoran, PRO HAC VICE, Berliner, Corcoran & Rowe, LLP, Washington, DC.

**JUDGES:** Samuel Der-Yeghiayan, United States District Court Judge.

**OPINION BY:** Samuel Der-Yeghiayan

**OPINION**

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before [*2] the court on Defendants' motions to dismiss. For the reasons stated below, the motions are denied in their entirety.

**BACKGROUND**

Plaintiffs brought the instant action against Defendants, which are international banking institutions that allegedly played a role in a wealth expropriation scheme involving the theft and withholding of assets and funds from Hungarian Jews who were victims of the Holocaust and their next of kin. Plaintiffs include in their amended complaint claims based on genocide, aiding and abetting genocide, bailment, conversion, and claims seeking a constructive trust and accounting. Defendants now move to dismiss the instant action.

**DISCUSSION**

Case 1:10-cv-01261-ESH   Document 25   Filed 05/25/11   Page 2 of 6

Page 2
2011 U.S. Dist. LEXIS 54293, *2

I. Subject Matter Jurisdiction

Defendants argue that this court lacks subject matter jurisdiction in the instant action. Pursuant to *28 U.S.C. § 1331* (*Section 1331*), "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* The Seventh Circuit in *Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007)*, made clear that "the assertion of a claim arising under any one of those sources of federal law [listed in *Section 1331*] is enough to support subject [*3] matter jurisdiction unless the claim is so plainly insubstantial that it does not engage the court's power." *Id. at 825*. Plaintiffs contend that Defendants have violated certain non-U.S. treaties (Non-U.S. Treaties), U.S. treaties (U.S. Treaties), and customary international law.

Defendants argue that this court lacks subject matter jurisdiction over the Non-U.S. Treaties, arguing that *Section 1331* references only "treaties of the United States." *28 U.S.C. § 1331*; *see also Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 737 (9th Cir. 2008)*(stating that a 'treaty of the United States' is a formal agreement between the United States and one or more other sovereigns, entered into by the President and approved by two-thirds of the Senate"). Defendants also argue that this court lacks subject matter jurisdiction over any of the Non-U.S. Treaties or U.S. Treaties because they are not deemed to be self-executing treaties. Regardless of whether the Non-U.S. Treaties or U.S. Treaties are self-executing, Plaintiffs have based their claims upon a violation of the historical norms established by the treaties, customary international law, and the limited area of law governing areas such as genocide. [*4] *See, e.g., Sosa v. Alvarez-Machain, 542 U.S. 692, 725, 762, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004)*; *Kadic v. Karadzic, 70 F.3d 232, 238-41 (2nd Cir. 1995)*(indicating that genocide is a violation of a universal norm of international law). In addition, contrary to Defendants' reading of footnote 19 in *Sosa*, the Supreme Court did not expressly foreclose bringing an action based on customary international law under the circumstances of the instant action.

In regard to the Alien Plaintiffs in the instant action, the Alien Tort Claims Act (ATS) provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *28 U.S.C. § 1350*. Although the ATS did not authorize the creation of new causes of action, an action can be based on a violation of the norms of treaties, such as the Non-U.S. Treaties and U.S. Treaties. *See, e.g., Sosa, 542 U.S. at 724-25*. As Defendants concede, the United States Supreme Court in Sosa indicated a claim can be "based on the present-day law of nations" as long as it "rest[s] on a norm of international character accepted by the civilized world and defined with a specificity [*5] comparable to the features of the 18th-century paradigms [the Court has] recognized." *Id. at 725*; *see also Abagninin, 545 F.3d at 738* (stating that "[t]he law of nations is synonymous with 'customary international law,' . . . and violations of international law must contravene a norm that is specific, universal, and obligatory").

Defendants contend that in the instant action Plaintiffs are presenting claims that are novel and not supported by law. However, Defendants have not shown that novel claims cannot be made, nor have Defendants pointed to any precedent explicitly foreclosing the instant action. *See Bowoto v. Chevron Corp., 557 F. Supp.2d 1080, 1090 (N.D. Cal. 2008)*(explaining that "*Sosa* reaffirmed *Filartiga, 630 F.2d at 881-82*, which relied on non-self-executing treaties as evidence of customary international law" and the court "reiterated the pre-Sosa holding in *Flores v. Southern Peru Copper Corp., 414 F.3d 233 (2d Cir. 2003)* that non-self executing treaties can be used as evidence of customary international law"). Defendants contend that "genocide by looting and aiding and abetting genocide by looting are not, per Sosa, universally accepted and specifically defined [contemporary [*6] international law] violations." (OTP Mem. Dis. 14). Defendants cite no controlling precedent that has expressly agreed with Defendants' position. (OTP Mem. Dis. 14-15).

Genocide by looting and aiding and abetting genocide by looting falls within the limited scope of jurisdiction recognized in *Sosa*. Genocide has been recognized as a violation of the norms of international character accepted by the civilized world and of contemporary international law. *See Sosa, 542 U.S. at 762* (Breyer, J., concurring in part and concurring in judgment)(indicating that there is a "subset" of "universally condemned behavior" that "includes torture, genocide, crimes against humanity, and war crimes"); *see also Kadic, 70 F.3d at 238-39* (stating that the court "find[s] the norms of contemporary international law by consulting the works of jurists, writing professedly on

public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law" and "[i]f this inquiry discloses that the defendant's alleged conduct violates well-established, universally recognized norms of international law, . . . as opposed to idiosyncratic legal rules, . . . then federal jurisdiction [*7] exists under the Alien Tort Act")(internal quotations omitted). In addition, Plaintiffs have pointed to support indicating that genocide was considered an established violation of international law long before World War II.

Defendants contend that the ATS was not intended to have an extraterritorial effect. However, the Seventh Circuit has indicated that "[g]enerally speaking, Congress has the authority to apply its laws, . . . beyond the territorial boundaries of the United States, to the extent that extraterritorial application is consistent with the principles of international law." *United States v. Dawn, 129 F.3d 878, 882 (7th Cir. 1997)*.

Defendants also contend that the ATS cannot subject a corporation to liability. Defendants cite *Sosa* in support of their position. (OTP Mem. Dis. 13). Although the court in *Sosa* referenced the issue of whether a corporation could be held liable under international law, the Court did not decide the issue. *Sosa, 542 U.S. at 733 n.20*. Defendants argue that the only decision that properly addressed this issue and applied *Sosa* is the Second Circuit in *Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2nd Cir. 2010)*. (OTP Reply 10). However, *Kiobel* is [*8] non-controlling precedent, and there is persuasive precedent indicating that corporations can be held liable under the ATS. *See, e.g., Romero v. Drummond Co., Inc., 552 F.3d 1303, 1315 (11th Cir. 2008)*(stating that "the law of th[at] Circuit is that [the ATS] grants jurisdiction from complaints of torture against corporate defendants"). The express language of the ATS does not include any express exemption for corporations or language from which such a conclusion can be inferred. *See id.* (stating that the ATS "provides no express exception for corporations"). This court agrees with the concurring opinion in *Kiobel* that there is a sufficient legal basis to hold corporations liable under the ATS for genocide. As the concurring opinion in *Kiobel* pointed out, if a corporation cannot be held liable under the ATS, then a corporation that "committed a genocide to increase its profits" would be able to obtain a dismissal of any action brought against it simply "on the ground that the defendant is a corporation." *Kiobel, 621 F.3d at 157* (Leval, J., concurring). The concurring opinion in *Kiobel* also aptly noted that "[r]ecognition of the humanitarian objectives of the law of nations makes it [*9] unlikely that this body of law intends to exempt corporations from its prohibitions or to provide a substantial financial incentive to violate the most fundamental of human rights." *Id. at 159*. Therefore, based on the record before the court at his juncture, this court has subject matter jurisdiction. In addition, Defendants request that the court decline to exercise supplemental jurisdiction over the state law claims. After consideration of the pertinent factors at this juncture, this court denies Defendants' request to decline to exercise supplemental jurisdiction over the state law claims. *See, e.g., Williams Electronics Games, Inc. v. Garrity, 479 F.3d 904, 906-07 (7th Cir. 2007)*(explaining considerations for declining to exercise supplemental jurisdiction); *Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999)*(same); *Timm v. Mead Corp., 32 F.3d 273, 277 (7th Cir. 1994)*(same).

II. Personal Jurisdiction

Defendant OTP Bank (OTP) and Defendant MKB Bank Zrt. (MKB) argue that they are not subject to personal jurisdiction in this forum. A federal district court has "personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes [*10] service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A., 623 F.3d 440, 443-44 (7th Cir. 2010)*. A defendant is deemed to be subject to "personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotations omitted)(quoting *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*(stating that "[i]t is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it 'reasonably anticipate being haled into court there'")(quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))*. Another aspect of the constitutional inquiry includes "whether the defendant 'purposefully avails itself' of the benefits and protections of conducting activities in the forum state." *Id.* Thus, a defendant is deemed to be "subject to general jurisdiction when it has 'continuous and systematic general business contacts' with the forum state." *uBID, Inc. v. GoDaddy*

Case 1:10-cv-01261-ESH   Document 25   Filed 05/25/11   Page 4 of 6

Page 4
2011 U.S. Dist. LEXIS 54293, *10

*Group, Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010)(quoting [*11] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). Plaintiffs have shown that OTP and MKB have extensive continuous and systematic general business contacts that would subject them to general personal jurisdiction.

III. *Forum Non Conveniens*

Defendants argue that this action should be dismissed based on the doctrine of *forum non conveniens*, arguing that the Hungarian courts provide an available and adequate alternative forum. Under the principle of *forum non conveniens*, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997); *see also Abad v. Bayer Corp.*, 563 F.3d 663, 665 (7th Cir. 2009); *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009). A determination of whether to dismiss an action based on *forum non conveniens* "is consigned to the trial court's sound discretion." *Kamel*, 108 F.3d at 802.

Even if the Hungarian courts provided an available and adequate alternative forum, Defendants have not shown that the convenience of the parties, or the interests [*12] of justice would be best served by a dismissal of the instant action. The potential inconvenience to the corporate Defendants in litigating here would be minimal compared to the potential inconvenience to Plaintiffs, if required to prosecute this action in the Hungarian courts. In addition, the record indicates that the pertinent evidence is dispersed, that many eyewitnesses are deceased, and that those who are living are dispersed. Further, a plaintiff's choice of forum is accorded deference. In general, "a plaintiff's choice of forum should rarely be disturbed" because "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981); *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir. 2001)(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947), for the proposition that "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed")(internal quotations omitted); *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997)(stating that "[o]rdinarily, the trial court should not supplant the plaintiff's choice of [*13] forum"). The Seventh Circuit has indicated that "a foreign plaintiff's choice of forum deserves less deference," *Kamel*, 108 F.3d at 803, but in the instant action, a substantial number of Plaintiffs are in the United States, and those American Plaintiffs' choice of forum should be accorded deference. There is also a local interest factor in regard to protecting the rights of such Plaintiffs in the United States and a strong American interest in vindicating international human rights violations such as genocide. Defendants have not shown that the instant forum is inappropriate or that the interests of justice and the convenience of the parties will not be served by a resolution of this case in this forum. Therefore, a dismissal under the doctrine of *forum non conveniens* is not warranted and Defendants' motion to dismiss on the basis of *forum non conveniens* is denied.

IV. Statute of Limitations

Defendants argue that the instant action is barred by the applicable statute of limitations periods. However, the Seventh Circuit has held that "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations" and a dismissal is only "appropriate when the plaintiff [*14] pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). In the instant action, Plaintiffs have not pled facts that establish that their claims are untimely. In addition, there are factual issues regarding potential tolling under the equitable tolling doctrines that cannot be assessed at the pleadings stage. Defendants also move for a dismissal based on defenses such as the doctrine of laches, but Plaintiffs were not required to plead in anticipation of defeating such defenses. Therefore, it is premature at this juncture to resolve the statute of limitations and laches issues.

V. Political Question

Defendants argue that Plaintiffs' claims should be dismissed based on the political question doctrine. The court should dismiss an action under the political question doctrine

> when any one of the following circumstances is present: a textually demonstrable constitutional commitment

Case 1:10-cv-01261-ESH   Document 25   Filed 05/25/11   Page 5 of 6

Page 5
2011 U.S. Dist. LEXIS 54293, *14

of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an [*15] initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*I.N.S. v. Chadha*, 462 U.S. 919, 941, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983)(citing *Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663, (1962))(internal quotations omitted).

Defendants contend that Plaintiffs' claims have been committed to the Executive Branch as a matter of foreign policy and that there are already Executive Agreements or Treaties in place settling Plaintiffs' claims, such as a Treaty between the United States and Hungary resolving some of the claims of victims of the Holocaust. However, it is premature to address at this juncture whether the Executive Agreements and Treaties cited by Defendants may limit certain Plaintiffs' claims, since their applicability raises factual issues not properly adjudicated at the motion to dismiss stage of the proceedings. At the summary judgment stage of the proceedings, if warranted, [*16] Defendants may re-raise the issue relating to the applicability of existing Executive Agreements or Treaties to Plaintiffs' claims.

Defendants also contend that there are no judicially discoverable or manageable standards for adjudication of Plaintiffs' claims and that Plaintiffs' claims require non-judicial resolution, arguing that the alleged events took place more than 65 years ago, that the identity of the alleged perpetrators is too indefinite, and that many "factors unrelated to the law or the conduct of the parties" affect issues of evidence, causation, liability, and/or fair compensation. (Mag. Mem. Dis. 37). However, Defendants have pointed to no controlling authority requiring the court to abstain from adjudicating Plaintiffs' claims for such alleged reasons, and the court does not find Defendant's argument to be persuasive. Therefore, based on the above, the court declines to dismiss the instant action based on the political question doctrine at this juncture.

VI. Immunity Pursuant to FSIA

Defendant Magyar Nemzeti Bank (Magyar), which is the central bank of Hungary, argues that Plaintiffs' claims against it are barred by the Foreign Sovereign Immunities Act (FSIA), which generally [*17] makes a foreign state (or an agency or instrumentality of a foreign state) "immune from the jurisdiction of the courts of the United States." *28 U.S.C. § 1604*. Plaintiffs have alleged sufficient facts to show, at this juncture, that the takings exception to the FSIA, found at *28 U.S.C. § 1605(a)(3)*, is applicable to the Plaintiffs' claims against Magyar. Plaintiffs allege that Magyar took money and other property held in bank accounts or kept in safe deposit boxes at Magyar. *See, e.g., Nemariam v. Federal Democratic Republic of Ethiopia*, 491 F.3d 470, 479-80, 377 U.S. App. D.C. 79 (D.C. Cir. 2007)(holding that *28 U.S.C. § 1605(a)(3)* applies to both tangible and intangible property, such as money in bank accounts). In addition, as discussed above, such taking was in violation of international law. *See, e.g., Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995)(indicating that "from its incorporation into international law, the proscription of genocide has applied equally to state and non-state actors"). Magyar has not presented any controlling precedent to the contrary. Further, *18 U.S.C. § 1091* does not expressly disavow the instant action, as Magyar contends. Finally, Plaintiffs have sufficiently alleged [*18] that Magyar owns or operates the property taken and that Magyar is engaged in commercial activity in the United States within the meaning of the FSIA. It is premature at this juncture to adjudicate Magyar's denial of the facts alleged. At the summary judgment stage of the proceedings, if warranted, Magyar may re-raise the arguments that it does not own or operate the property at issue or that it does not engage in commercial activity within the meaning of the FSIA.

In addition, Plaintiffs have raised the argument that even if the takings exception to sovereign immunity is not applicable to Plaintiffs' claims, Magyar has implicitly waived immunity. Plaintiffs contend that Hungary has waived immunity through its agreement in its constitution to submit to international law, and that the Hungarian Constitutional Court has found that Hungary has failed to

make fair compensation to the victims of genocide as required under the Hungarian Constitution. Since there remain factual issues concerning whether Magyar is even entitled to immunity under FSIA, it is premature to adjudicate the waiver issue at this juncture. At the summary judgment stage of the proceedings, if warranted, Plaintiffs may [*19] re-raise the issue regarding any waiver of sovereign immunity.

VII. Acts of State Doctrine

Magyar argues that Plaintiffs' claims against it are barred by the acts of state doctrine, "which requires American courts to presume the validity of an official act of a foreign sovereign performed within its own territory." *Republic of Austria v. Altmann, 541 U.S. 677, 713-14, 124 S. Ct. 2240, 159 L. Ed. 2d 1 (2004)*(internal quotations omitted)(citations omitted); *see also Agudas Chasidei Chabad of U.S. v. Russian Federation, 528 F.3d 934, 951, 381 U.S. App. D.C. 316 (D.C. Cir. 2008)*(citing *Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428, 84 S. Ct. 923, 11 L. Ed. 2d 804 (1964))*. In considering the applicability of the acts of state doctrine, the court looks at several factors, including the "degree of codification or consensus concerning a particular area of international law" and whether "the government which perpetrated the challenged act of state" is still in existence. *Banco Nacional de Cuba, 376 U.S. at 427-28*; *see also Restatement (Third) of Foreign Relations Law of the United States, Sect. 443 Comment (d)* (1987)(stating that the acts of state doctrine would not likely bar claims by victims of genocide, "since the accepted international law of human rights is well established [*20] and contemplates external scrutiny of such acts"). Magyar has the burden to show that the acts of state doctrine should be applied in this case. *Chabad, 528 F.3d at 951*. Magyar has not met its burden at this juncture. Determining whether the acts of state doctrine applies in this case raises factual issues that cannot be resolved at the pleading stage. At the summary judgment stage of the proceedings, if warranted, Magyar may re-raise the argument that the acts of state doctrine bars the Plaintiffs' claims against Magyar.

VIII. Failure to State a Claim

Defendant Erste Group Bank (Erste) and OTP argue that Plaintiffs' claims against them must be dismissed for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (*Rule 12(b)(6)*), contending that Plaintiffs failed to allege sufficient facts regarding successor liability. OTP also argues that Plaintiffs have failed to allege sufficient facts showing that Plaintiffs have standing to bring claims against OTP or that Plaintiffs were injured by OTP's conduct. In ruling on a motion to dismiss brought pursuant to *Rule 12(b)(6)*, a court must "accept as true all of the allegations contained in a complaint" and make reasonable [*21] inferences in favor of the plaintiff. *Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002)*. To defeat a *Rule 12(b)(6)* motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal, 129 S.Ct. at 1949* (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. Plaintiffs have alleged sufficient facts to plausibly suggest successor liability by Erste and OTP. Plaintiffs have also alleged sufficient facts to plausibly suggest that Plaintiffs have standing and were injured by the acts of Defendants. At the summary judgment stage of the proceedings, if warranted, Defendants may re-raise arguments related to successor liability and standing.

Based on all of the above, Defendants' motions to dismiss are denied in their entirety.

**CONCLUSION**

Based on the foregoing analysis, Defendants' motions to dismiss are denied in their entirety.

/s/ Samuel Der-Yeghiayan

Samuel Der-Yeghiayan

United States District Court Judge

Dated: May 18, [*22] 2011