IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID L. de CSEPEL, *et al.* | ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| vs. | ) No. 1:10-cv-01261(ESH) <br> ) |
| REPUBLIC OF HUNGARY, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

PLAINTIFFS' REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF THEIR ALTERNATIVE
CROSS-MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

Michael D. Hays
Daniel D. Prichard
DOW LOHNES PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, D.C.  20036-6802

Michael S. Shuster (*pro hac vice*)
Alycia Regan Benenati (*pro hac vice*)
KASOWITZ BENSON TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019

*Attorneys for Plaintiffs*

Dated:  November 7, 2011

Plaintiffs David L. de Csepel, Angela Maria Herzog and Julia Alice Herzog respectfully submit this reply memorandum of law in further support of their alternative cross-motion for certification, pursuant to 28 U.S.C. § 1292(b), of the issue of whether this Court correctly applied the doctrine of international comity to bar certain of Plaintiffs' claims.

## PRELIMINARY STATEMENT

After asking this Court to certify every single one of their rejected theories for immediate interlocutory appeal under 28 U.S.C. § 1292(b), Defendants now unfairly ask this Court (if it were to grant their motion) to refrain from certifying the one theory on which Defendants prevailed in part – international comity – because such certification would allegedly "waste judicial resources." (Def. Reply (Dkt. No. 46) at 16.)  However, as discussed in Plaintiffs' opposition to Defendants' motion to certify (Pl. Opp. (Dkt. No. 44) at 1-2, 4-5), it is Defendants who improperly seek to prolong and complicate what should otherwise be a straightforward appeal on sovereign immunity grounds by asking this Court to certify numerous other issues for appeal.  Moreover, it is Defendants who have suggested (wrongly) that the Court's analysis of other issues for which they seek certification, including *forum non conveniens* and statute of limitations, should have been different as a result of the Court's decision to dismiss certain of Plaintiffs' claims on grounds of comity.  Allowing the appellate court to review the comity issue together with these other issues (should the Court decide to certify them) would enhance – not waste – judicial resources.[1]

Defendants' argument that there are no substantial grounds for a difference of opinion concerning this Court's comity ruling is wrong.  Plaintiffs respectfully submit that this Court

---

[1] As explained in Plaintiffs' opposition brief (Pl. Opp. at 2 n.1 & 20-23), Plaintiffs seek certification of the comity issue only in the event that this Court grants Defendants' motion for certification of other issues, which Plaintiffs oppose.

could (and should) have declined to defer to the ruling of the Hungarian court on public policy grounds. The Hungarian court's ruling was based on an erroneous construction of a United States executive agreement and resulted from biased proceedings in which the plaintiff's access to evidence was curtailed. Deferring to that decision unfairly penalizes a United States citizen for attempting to exhaust her foreign remedies before pursuing claims in a United States court. Martha Nierenberg brought a claim in Hungary only because she was under the misimpression, based on the prevailing state of the law on exhaustion (which has since been clarified), that she was required to do so before she could bring an action in the United States. For all of these reasons, certification of this Court's comity ruling is entirely appropriate under 28 U.S.C. § 1292(b).

## ARGUMENT

### I. CERTIFICATION OF THE ISSUE OF WHETHER THIS COURT CORRECTLY APPLIED THE DOCTRINE OF COMITY IS APPROPRIATE IF THE COURT DECIDES TO CERTIFY OTHER ISSUES FOR IMMEDIATE APPEAL

#### A. Certification Would Promote Judicial Efficiency

Defendants' argument that certification of the comity issue would be inappropriate because "reversal of this Court's comity finding would not save court or party resources," (Def. Reply at 14) or would "waste judicial resources" (Def. Reply at 16) is meritless, particularly in light of their argument that the Court should have ruled differently on other issues for which Defendants seek certification in light of its comity holding.

For example, Defendants argued in their moving brief that "this Court's dismissal of claims relating to artworks claimed directly by Plaintiff de Csepel significantly altered the landscape of this litigation," because it allegedly diminished the connection between the United States and the lawsuit. (Def. Mov. Br. (Dkt. No. 43) at 8; *see also* Reply Br. (Dkt. No. 46) at 4 (suggesting that "the connection between Hungary, the Italian Plaintiffs, and this Court is even

2

more attenuated," as a result of this Court's comity decision).)  Defendants also (wrongly) suggest that this Court's dismissal of the eleven paintings that were the subject of the Nierenberg litigation on comity grounds should have changed the Court's equitable tolling analysis.  (Mov. Br. at 10; Reply Br. at 6.)  While Plaintiffs vigorously disagree with Defendants' arguments (Pl. Opp. at 10-11, 12), if this Court elects to certify these other issues as Defendants have requested, it makes sense (and is only fair) for the appellate court to have the opportunity to review the comity issue as well.

Moreover, if the appellate court were to reverse this Court's comity decision and reinstate Plaintiffs' claims to the eleven works of art, that ruling could "materially affect the course of litigation with resulting savings of the court's or the parties' resources," because it would allow Plaintiffs to pursue discovery with respect to all of the artworks at once instead of having to redepose witnesses – some of whom are elderly or who are located in foreign countries – at a later time if the Court's comity decision is later reversed.  *APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 90, 95-96 (D.D.C. 2003).

### B. There Are Substantial Grounds For Difference Of Opinion Concerning The Court's Conclusion That Comity Bars Certain of Plaintiffs' Claims

Plaintiffs' request for certification of this Court's comity ruling is not, as Defendants wrongly suggest, based on "disappointment" with the results of the Nierenberg litigation (Def. Reply at 15), or on the mere fact that a United States citizen did not prevail in a foreign proceeding.  (*Id.* at 15 n.15.)  Certification is warranted because the Hungarian court's ruling contravened United States public policy and was therefore not entitled to deference.  (Pl. Opp. at 19-23.)   The Hungarian court's ruling was based entirely on an erroneous interpretation of a United States executive agreement and applied meritless technical defenses to bar the Holocaust-related property claims of a United States citizen in a proceeding in which the foreign state (of

3

which the judiciary is a part) was self-interested and that was not conducted in accordance with internationally recognized standards of due process.[2] (*Id.*)

Defendants' argument that Plaintiffs' claims conflict with United States public policy (Def. Br. at 15-16 n.15) because Hungary and the United States are parties to the 1947 Peace Treaty and the 1973 Agreement, or because post-war Allied policy was to return looted Holocaust property to its country of origin, is nothing more than a re-hashing of the political question doctrine arguments that this Court has already rejected, *see de Csepel v. Republic of Hungary*, 2011 U.S. Dist. LEXIS 98573, at *70-72 (D.D.C. Sept. 1, 2011), and in any event is meritless. As this Court correctly recognized, Plaintiffs' claims are not predicated on the 1947 Treaty or the 1973 Agreement, nor did the United States espouse, in the 1973 Agreement, claims by persons such as Martha Nierenberg's mother, Elizabeth Weiss de Csepel, who were not United States citizens when their property was taken. *See id.* Nor do Plaintiffs' claims implicate Allied post-war restitution policy. Property was returned to Hungary after the war by the Allies so that it could be restituted to Holocaust victims wherever possible – not for Hungary to keep

---

[2] Defendants' assertion that "[c]ourts throughout this country have disposed of analogous claims" (Def. Reply at 15 n.15) is wrong. The cases cited by defendants generally involved quiet title or other declaratory judgment claims against United States museums or other alleged good-faith purchasers of looted art that were found to be barred on statute of limitations grounds. None involved the issue of whether comity required deference to a foreign ruling, and none involved bailment claims – such as those asserted here – against a foreign sovereign defendant that itself looted Jewish property during the Holocaust. Nor are the circumstances of this case analogous to a U.S. plaintiff seeking to re-litigate in a District of Columbia forum claims that were already fully adjudicated in another U.S. state, as Defendants wrongly suggest. (Def. Br. at 15.) Where, as here, Martha Nierenberg reasonably believed in 1999 that exhaustion of foreign remedies was required before she could pursue claims in a United States forum, her efforts to do so should not now be grounds for rejecting her claims. (Pl. Opp. at 21.)

4

for its own benefit (as acknowledged by Hungary in the 1947 Peace Treaty). As such, Plaintiffs' bailment claims are entirely consistent with United States public policy.[3]

Defendants' argument that Plaintiffs have offered no "evidence suggesting 'either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason'" to decline to defer to the Hungarian court's decision (Def. Br. at 15) is also meritless. As Plaintiffs explained in their moving brief (Pl. Opp. at 22-23), the Complaint alleges that the Nierenberg litigation was not conducted in accordance with internationally recognized principles of due process (Compl. ¶ 79). Moreover, Plaintiffs submitted an affidavit explaining that Martha Nierenberg was unable to obtain relevant evidence during the Nierenberg litigation from Defendants, who had control of all relevant documents. (Varga Decl. (Dkt. No. 22-6) at ¶ 5.) Other claimants have faced similar hurdles in Hungary as Hungary has diligently avoided other Holocaust restitution claims. (*Id.*, ¶¶ 20-23.)[4] The Restatement (Third) Foreign Relations recognizes such circumstances as grounds for declining to recognize a foreign judgment (Pl. Opp. at 22 (citing Restatement (Third) Foreign Relations § 482, comment b)) and Plaintiffs should have been given the opportunity to develop the factual record further to support their allegations at the Rule 12 stage particularly where, as here, the ruling at issue came about in a proceeding where the foreign state itself was the defendant.

---

[3] Defendants' reference to various Hungarian laws that purport to provide restitution for certain property claims (Def. Br. at 14-15) is irrelevant. As this Court correctly recognized, none of those laws apply to Plaintiffs' claims. *See de Csepel*, 2011 U.S. Dist. LEXIS at 98573, at *33-34.

[4] Hungary's efforts to avoid its Holocaust-era past are reflected in its new Constitution, which takes effect on January 1, 2012, and which disavows any culpability for Hungary's wartime conduct against Hungarian Jews. *See* Thomas Ország-Land, "New Hungarian Constitution Shirks Responsibility for the Holocaust" (September 2011) *available at*: http://www.newenglishreview.org/custpage.cfm/frm/96102/sec_id/96102 (attached hereto as Exhibit A). *See also* Decl. of Professor Dr. Tamas Lattmann dated April 29, 2011 (Dkt. No. 22-24) ¶ 39.

5

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that this Court also certify the question of whether the Court correctly applied the doctrine of international comity for immediate interlocutory appellate review in the event that Defendants' motion for certification is granted.

Respectfully submitted,

___/s/ Michael D. Hays_____
Michael D. Hays (D.C. Bar No. 932418)
Daniel D. Prichard (D.C. Bar No. 476449)
DOW LOHNES PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, D.C. 20036-6802
Tel: (202) 776-2000
Fax: (202) 776-2222
mhays@dowlohnes.com
dprichard@dowlohnes.com

*Counsel For Plaintiffs*

*Counsel pro hac vice*:

Michael S. Shuster
Sheron Korpus
Alycia Regan Benenati
Megan Zwiebel
KASOWITZ BENSON TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
mshuster@kasowitz.com
skorpus@kasowitz.com
abenenati@kasowitz.com
mzwiebel@kasowitz.com

Dated: November 7, 2011

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Reply Memorandum Of Points And Authorities In Support of Their Alternative Motion For Certification Pursuant to 28 U.S.C. § 1292(b) was served this 7th day of November, 2011, via the Court's electronic filing system on the following individuals:

D. Grayson Yeargin
David D. West
NIXON PEABODY LLP
401 Ninth Street NW
Suite 900
Washington, DC 20004
Tel: (202)-585-8000
Fax: (202)-585-8080
gyeargin@nixonpeabody.com
dwest@nixonpeabody.com

Thaddeus J. Stauber (*pro hac vice*)
Sarah Erickson André (*pro hac vice*)
NIXON PEABODY LLP
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 629-6000
Fax: (213) 629-6001
tstauber@nixonpeabody.com
sandre@nixonpeabody.com

/s/ *Michael D. Hays*
Michael D. Hays