**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DAVID L. de CSEPEL, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:10-cv-01261 (ESH) |
| vs. ) | |
| REPUBLIC OF HUNGARY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**JOINT CASE STATEMENT**

Pursuant to this Court's orders dated July 29 and August 7, 2013, the parties – Plaintiffs David L. de Csepel, Angela Maria Herzog and Julia Alice Herzog (together, "Plaintiffs") and Defendants Republic of Hungary, Museum of Fine Arts, Hungarian National Gallery, Museum of Applied Arts, and Budapest University of Technology and Economics (together, "Defendants") – by and through undersigned counsel, hereby respectfully submit this brief statement of the case and the statutory basis for all causes of action and defenses.

Plaintiffs' Position:

This action seeks the recovery of more than forty valuable artworks belonging to the family of Baron Mór Lipót Herzog, a well-known Jewish Hungarian collector of art, who had amassed a magnificent collection of more than two thousand paintings, sculptures and other artworks (the "Herzog Collection") prior to his death in 1934. Plaintiffs are members of the Herzog family and heirs to the Herzog Collection (the "Herzog Heirs") and, contrary to Defendants' assertions, represent all of the heirs of each of the three Herzog siblings who

originally inherited the collection from their father, Baron Herzog. The artworks described in the Complaint were looted by Hungary and its Nazi collaborators during World War II and came into the possession of the Museum of Fine Arts (Szépművészeti Múzeum), Budapest, the Hungarian National Gallery, and the Museum of Applied Arts, Budapest (together, the "Museums") as well as the Budapest University of Technology and Economics (the "University"), each an agency or instrumentality of the Republic of Hungary.

After World War II, the Museums and the University became custodians of the Herzog Collection as a result of various express or implied bailment agreements between the Herzog Heirs and the Defendants that allowed Defendants to retain possession of the Herzog Collection and to continue to display the works in Hungary. The Hungarian government, the Museums and the University have breached those bailment agreements by refusing to return the Herzog Collection to the Herzog Heirs upon demand. Plaintiffs commenced this action on July 27, 2010 asserting claims for (i) breach of the bailment agreements; (ii) conversion; (iii) constructive trust; (iv) an accounting; (v) declaratory judgment; and (vi) restitution based on unjust enrichment.[1]

On February 15, 2011, Defendants moved to dismiss the Complaint under various theories, including foreign sovereign immunity under the U.S. Foreign Sovereign Immunities Act ("FSIA"), treaty and/or executive agreement, forum non conveniens, the act of state doctrine, the statute of limitations, the political question doctrine, comity/res judicata, and failure to state a claim for bailment. On September 1, 2011, this Court denied the motion to dismiss in

---

[1] Defendants' characterization of this litigation as "akin to forty-four consolidated lawsuits" is misleading and inapt – although more than forty pieces of art are at issue here they were all the property of Baron Herzog and came into the Defendants' possession under similar, if not the same, circumstances. To treat each art work as a separate litigation would be illogical and wasteful.

2

all respects, except as to eleven paintings that had previously been the subject of litigation in Hungary brought by Martha Nierenberg, Plaintiff de Csepel's aunt. [2]

On September 12, 2011, Defendants filed a notice of appeal of the denial of their motion to dismiss on grounds of sovereign immunity pursuant to 28 U.S.C. § 1291. Defendants subsequently moved for certification of five additional issues for appeal pursuant to 28 U.S.C. § 1292(b), Plaintiffs cross-moved for certification of the comity ruling, and the District Court granted both motions on November 30, 2011.

On April 19, 2013 the D.C. Circuit affirmed in part and reversed in part this Court's denial of the Defendants' motion to dismiss. The Court of Appeals found that the Defendants are not immune from suit under the commercial activity exception to the FSIA, 28 U.S.C. § 1605(a)(2), because 1) Plaintiffs' bailment claim is a form of breach of contract claim, 2) a foreign state's repudiation of a contract is precisely the type of activity in which a private player within the market engages, and 3) said repudiation could have direct effects in the United States. The Court of Appeals also held Plaintiffs' claims are not barred by treaty or executive agreement and affirmed this Court's rejection of Defendants' remaining defenses. The only ground on which the Court of Appeals reversed this Court was with respect to this Court's conclusion that Plaintiffs' claims for the eleven paintings were barred by comity. The Court of Appeals held that because comity is an affirmative defense for which the party seeking recognition of the foreign judgment bears the burden of proof, such issues are properly addressed at summary judgment or at trial.

---

[2] The Defendants' assertion that this Court did not address their arguments concerning the 1947 Peace Treaty in its 2011 decision is inaccurate. This Court indeed considered their arguments but found that "Plaintiffs' claims, however, do not depend on the existence of a bailment created by the Peace Treaty itself. Rather, the Complaint alleges breach of express and/or implied bailment agreements between defendants and the Herzog family." *de Csepel v. Republic of Hungary*, 808 F. Supp. 2d 113, 135 (D.D.C. 2011).

Based on both this Court's and the Court of Appeals' holdings, it is clear that the Plaintiffs' claims are properly pleaded in the complaint and that this Court has jurisdiction over Defendants under the FSIA. As set forth in Plaintiffs' portion of the Joint Status report filed by the parties on September 19, 2013, Plaintiffs contend that further pre-discovery motion practice is unwarranted and will only needlessly delay this litigation further. The additional legal issues the Defendants suggest they will address in motion practice, such as the sufficiency of Plaintiffs' bailment claims and comity, are, as the Court of Appeals held, appropriately addressed only in a summary judgment motion or at trial. The Defendants have no grounds for making a second Rule 12 motion revisiting the jurisdictional arguments that have already been heard, and rejected, by this Court and the Court of Appeals. [3]

Defendants' Statement:

Plaintiffs filed this action against Defendants on July 27, 2010, listing causes of action for: (1) bailment; (2) conversion; (3) constructive trust; (4) accounting; and (5) declaratory relief, relating to Defendants' alleged possession of artworks identified on the complaint. Defendants moved to dismiss Plaintiffs' complaint under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Defendants asserted that this Court lacked jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 29 U.S.C. §§ 1602 *et seq.*, as Plaintiffs' claims are governed by international agreements and, even if the FSIA could apply, neither Section 1605(a)(3) (the expropriation exception) nor Section 1605(a)(2) (the commercial activity exception) apply to strip Hungary of its presumptive sovereign immunity. Defendants also asserted that Plaintiffs' complaint must be dismissed, under Rule 12(b)(6), on the grounds that: (1) Plaintiffs' complaint failed to state a cognizable bailment claim; (2) Plaintiffs' claims are barred by three year statute

---

[3] Nor are Defendants entitled to raise a personal jurisdiction defense when they failed to include such a defense in their original Rule 12 motion. *See* Fed. R. Civ. P. 12(g) and 12(h)(1).

of limitations under Washington, D.C. law; (3) the Act of State doctrine bars adjudication of Plaintiffs' claims; (4) Plaintiffs' claims present non-justiciable political questions; and (5) principles of international comity, *res judicata*, and *forum non conveniens* counsel against adjudicating Plaintiffs' claims. Defendants also requested that the Court take judicial notice of certain materials, including the existence of the Nierenberg litigation in Hungary (in which ownership claims to many of the artworks at issue in this action were raised and/or litigated) and various Hungarian laws.

On September 1, 2011, this Court granted, in part, and denied, in part, Defendants' motion to dismiss Plaintiffs' complaint. The Court granted Defendants' motion, in part, on the ground that because Plaintiffs' predecessor had already litigated (in Hungary) eleven of the artworks claimed in this lawsuit, but offered no evidence of a due process violation, principles of international comity applied to bar Plaintiffs' claims to the eleven artworks. With respect to Defendants' Rule 12(b)(1) arguments, this Court found that the 1973 Agreement between the United States and Hungary did not govern Plaintiffs' claims.[4] Moreover, this Court found that both the FSIA's expropriation exception and commercial activity exception applied to permit the Court to take jurisdiction over Defendants. The Court denied Defendants' Rule 12(b)(6) motion, in part, on the grounds that, based on the complaint and the early pleading stage: (1) Plaintiffs had alleged a cognizable bailment claim; (2) the Court was not compelled to apply the doctrine of *forum non conveniens*; (3) Plaintiffs' bailment claim might be timely; and (4) neither the Act of State doctrine nor the political question doctrine applied to bar Plaintiffs' claims.

---

[4] The Court did not address Defendants' argument that the 1947 Peace Treaty governed Plaintiffs' claims and precluded the Court from taking jurisdiction over Hungary.

Defendants filed, as a matter of right, a notice of appeal with the U.S. Court of Appeals for the D.C. Circuit challenging this Court's jurisdictional finding. Defendants also moved to certify for interlocutory appeal those aspects of the Rule 12(b)(6) motion this Court denied. Plaintiffs opposed the motion, but filed a cross-motion to certify for interlocutory appeal this Court's international comity finding. This Court granted the parties' motions and the appellate court granted the parties permission to seek interlocutory appeal.

The U.S. Court of Appeals for the D.C. Circuit heard oral argument in the consolidated action on January 23, 2013. On April 19, 2013, the U.S. Court of Appeals for the D.C. Circuit affirmed, in part, and reversed, in part, this Court's September 1, 2011, decision. The appellate court rejected Defendants' arguments that Plaintiffs' bailment claim is governed by international agreements, that the bailment raised a non-justiciable political question, or that the Act of State doctrine should be applied. Focusing solely on Section 1605(a)(2), the appellate court found that the FSIA's commercial activity exception applied to strip Hungary of its presumptive jurisdiction.

The appellate court affirmed this Court's finding that, at the early motion to dismiss stage, Plaintiffs pleaded a bailment claim. In doing so, the Court noted that Plaintiffs' allegations "distinguish this case from one 'in essence based on disputed taking of property . . . .'" The appellate court also noted that Plaintiffs' remaining claims (conversion, constructive trust, accounting, and restitution based on unjust enrichment) are not standalone claims, but are premised on Plaintiffs' bailment claim. The appellate court recognized that Washington, D.C.'s three year statute of limitations applies, but noted that "at the motion to dismiss stage, we look only at the complaint," and as it is not clear from the face of the complaint that the bailment claim is time-barred, the claim can proceed.

The appellate court reversed this Court's application of international comity as untimely. The appellate court did not reject this Court's legal reasoning, but found that because the complaint invoked an (unspecified) due process violation and, in the view of the appellate court, international comity is an affirmative defense to which Plaintiffs were not required to respond in their complaint, the Court's international comity analysis was premature. The appellate court issued the mandate on July 29, 2013.

This lawsuit is akin to forty-four consolidated lawsuits, as (1) each artwork is attributable of one of three Herzog heirs, (2) each artwork has a unique historical provenance, and (3) each artwork will require an individualized examination by the Court. Defendants maintain, and will continue to maintain, that Defendants are the lawful owners of the artworks. As an initial matter, Defendants expects to file a motion to dismiss under Rule 12(b)(1) on the ground that this Court lacks personal and subject matter jurisdiction over those artworks attributable to non-U.S. citizens. Defendants believe that this Court lacks jurisdiction over the artworks (which are located in Hungary, along with most relevant documents and witnesses) that are attributable to the foreign Plaintiffs. Neither the artworks nor the non-U.S. citizen Plaintiffs have any connection to the United States, and the non-U.S. citizen plaintiffs cannot demonstrate that their bailment claims would have the necessary "direct effect" in the United States, as required by the FSIA's commercial activity exception. Plaintiffs fail to identify which artwork is attributable to which plaintiff (named or unidentified). Defendants assert that the non-U.S. citizen plaintiffs cannot simply assign their claims to Plaintiff David de Csepel, the sole identified United States citizen-plaintiff, in an attempt forum shop and create jurisdiction in the United States over these "foreign cubed" claims.

Defendants plan to file a motion asking that the Court apply foreign law to Plaintiffs' bailment claim. As the artworks were taken by a foreign sovereign from non-U.S. citizens, those artworks are located in a foreign country, and the alleged bailment was, presumably, created in a foreign country, this Court must apply foreign law (likely Hungarian and/or Italian law) to Plaintiffs' bailment claim. Further, Defendants expect to file a motion arguing that the Italian Plaintiffs' claims are barred by the bilateral treaty between Italy and Hungary (1973) that resolved the Italian Plaintiffs' property claims.

Defendants believe that Plaintiff de Csepel's claims are barred by principles of international comity and *res judicata* as his ownership claims were litigated in Hungary over the course of eight years by his aunt and predecessor, Martha Nierenberg, and there is no evidence that the litigation violated principles of due process such that this Court should reject the reasoned holdings of the Hungarian judicial system.[5]  Further, to the extent that this Court has subject matter jurisdiction to hear the Italian Plaintiffs' claims, Defendants assert that those claims are barred by principles of international comity and *res judicata* as the Italian Plaintiffs' claims could not proceed in Italy and they (along with other, unnamed Herzog heirs) participated in the Hungarian litigation and cannot now raise their claims anew.  Focused discovery may be appropriate to address this challenge.

---

[5] Defendants expect it will be necessary to add additional plaintiffs to the action, as it is not clear that the three named plaintiffs represent the interests of the three Herzog siblings.  In the Nierenberg litigation, the Hungarian courts brought the Italian Plaintiffs into the lawsuit to protect their rights, as Martha Nierenberg was the lawful heir to only a portion of the artworks she claimed.  As only two Herzog heirs are represented (Erzsébet Weiss de Csepel, represented by Plaintiff de Csepel, and András Herzog, represented by the Italian Plaintiffs) additional parties must be added to insure that all interests (including the interests of István Herzog) are adequately represented.

Defendants assert that Plaintiffs' bailment claim will not survive the next phase of litigation, as this Court is no longer permitted to focus solely on the complaint's unsupported allegations that identify neither the specific participants in the purported bailment nor the date of its alleged creation. Moreover, Defendants believe that any cognizable bailment claim is barred by principles of adverse possession and by the applicable three year statute of limitations. Focused discovery may be appropriate to address this challenge.

Defendants assert that the legal challenges this case presents can be efficiently and effectively addressed with targeted dispositive motion practice leading up to a final summary judgment motion.

Dated: September 21, 2013

/s/ Michael D. Hays
Michael D. Hays (D.C. Bar No. 932418)
DOW LOHNES PLLC
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 776-2000
Fax: (202) 776-2222
mhays@dowlohnes.com

*Counsel For Plaintiffs*

Respectfully submitted,

/s/ D. Grayson Yeargin
D. Grayson Yeargin (D.C. Bar No. 476324)
Emily C. Harlan (D.C. Bar No. 989267)
NIXON PEABODY LLP
401 Ninth Street NW, Suite 900
Washington, DC 20004
Tel: (202)-585-8000
Fax: (202)-585-8080
gyeargin@nixonpeabody.com
eharlan@nixonpeabody.com

*Counsel for Defendants*

Of Counsel:

Michael Shuster (*pro hac vice*)
Dorit U. Black (*pro hac vice*)
HOLWELL SHUSTER & GOLDBERG LLP
125 Broad Street
New York, New York 10017
Tel: (646) 837-5151
Fax: (646) 837-5150

Of Counsel:

Thaddeus J. Stauber (*pro hac vice*)
Sarah Erickson André (*pro hac vice*)
NIXON PEABODY LLP
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 629-6000

mshuster@hsgllp.com
dblack@hsgllp.com

Sheron Korpus (*pro hac vice*)
Alycia Regan Benenati (*pro hac vice*)
KASOWITZ BENSON TORRES &
    FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
abenenati@kasowitz.com

Fax: (213) 629-6001
tstauber@nixonpeabody.com
sandre@nixonpeabody.com