## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID L. de CSEPEL, et al.,

    Plaintiffs,

    v.

HUNGARY, et al.,

    Defendants.

Civil Action No. 10-1261 (JDB)

## ORDER

This case involves a group of family members, all descendants of renowned art collector Baron Mór Lipót Herzog, who claim ownership of certain artworks in a collection seized by the World War II-era Hungarian government and its Nazi collaborators during the Holocaust.  See Am. Compl. [ECF No. 141] ¶¶ 1–2, 6–8, 106.  Plaintiffs commenced this action twelve years ago, see Compl. [ECF No. 1] at 27; since then, the parties have filed numerous dispositive motions, three appeals, and a petition for certiorari.  See de Csepel v. Republic of Hungary, 27 F.4th 736, 741–42 (D.C. Cir. 2022) ("de Csepel IV").  After the D.C. Circuit's latest decision remanding the case to this Court, defendants—a group of museums in possession of the contested artworks and Magyar Nemzeti Vagyonkezelő Zrt.[1] ("MNV")—now move to stay the litigation because they intend to file a petition for certiorari seeking review of the D.C. Circuit's decision.  See Mem. of P. & A. in Supp. of Defs.' Mot. to Stay Activity Before the District Ct. Pending Resolution of Defs.' Forthcoming Pet. for a Writ of Cert. [ECF No. 199-1] ("Mot. to Stay") at 1–2.  Plaintiffs oppose this request, arguing that a stay is not warranted.  See generally Pls.' Mem. of P. & A. in Opp'n to Mot. to Stay [ECF No. 202] ("Opp'n").  Because the relevant factors do not support

---

[1] MNV's name translates to "Hungarian National Asset Management, Inc."  de Csepel IV, 27 F.4th at 741.

staying proceedings at this time, the Court will deny defendants' motion.

## **Background**

In its latest decision, the D.C. Circuit thoroughly set out the factual background and procedural history of this case, and the Court will incorporate that summary by reference. See de Csepel IV, 27 F.4th at 739–42.  As relevant here, the D.C. Circuit held that (1) although the Republic of Hungary has been dismissed as a defendant, this litigation may nonetheless proceed pursuant to Federal Rule of Civil Procedure 19(b) because the remaining defendants are so aligned with Hungary that they will adequately protect Hungary's interests, id. at 748–52; and (2) that the Foreign Sovereign Immunities Act ("FSIA") does not require prudential exhaustion in suits against foreign states, so plaintiffs were not required to exhaust their potential remedies in Hungary before filing suit in the United States, id. at 753.  The court of appeals declined to review "the district court's determinations of jurisdiction over individual artworks" and remanded the case to this Court for further proceedings.  Id. at 753–54.

After receiving the parties' views, the Court set a schedule for further motions, including defendants' proposed motion to dismiss on the issue of domestic takings, the parties' proposed cross-motions for summary adjudication on choice of law, and defendants' proposed motion for summary judgment on the issues of comity and statute of limitations.  See Scheduling Order, June 21, 2022 [ECF No. 200] at 1.  Defendants now move to stay that schedule pending their forthcoming petition for certiorari.  Specifically, defendants report that they will seek review of the D.C. Circuit's decision holding:

> (1) that neither Federal Rule of Civil Procedure 19 nor the Supreme Court's decision in Republic of Philippines v. Pimentel, 533 U.S. 851 (2008), bar this action from going forward where the owner of the claimed property and the sources of Plaintiffs' injuries is immune and it is undisputed that its interests will be adversely affected if the case continues[; and] (2) that non-immune sovereigns may not raise a defense of international comity (exhaustion), even though the Seventh Circuit

recognizes it is a defense available to non-immune sovereigns, see Fischer v. Magyar Államvasutak Zrt., 777 F.3d 847, 857–58 (7th Cir. 2015), and the Supreme Court recognizes that such entities must be treated like private parties, see Cassirer v. Thyssen-Bornemisza Collection Found., 142 S. Ct. 1502, 1508–10 (2022).

Mot. to Stay at 1–2.  The petition is due to be filed on August 8, 2022.  Id. at 1.

## Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time for itself, for counsel, and for litigants.  How this can best be done calls for an exercise of judgment, which must weigh competing interests and maintain an even balance."  Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n.6 (1998) (alteration in original; citation omitted).  A party seeking a stay must show that the stay is warranted upon consideration of four factors:  "(1) the likelihood that the party seeking the stay will prevail on the merits . . . ; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  Loving v. IRS, 920 F. Supp. 2d 108, 110 (D.D.C. 2013) (quoting Cuomo v. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam)).

With respect to the first factor, the movant "need not always establish a high probability of success on the merits," Cuomo, 772 F.2d at 974; some courts have concluded that, "instead, so long as the other factors strongly favor a stay, such remedy is appropriate if 'a serious legal question is presented,'" Loving, 920 F. Supp. 2d at 110 (quoting Citizens for Resp. & Ethics in Wash. v. Off. of Admin., 593 F. Supp. 2d 156, 160 (D.D.C. 2009)).  But to succeed under this formulation, the possibility of irreparable harm to the moving party "must be both certain and great," and the movant "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  Wis. Gas Co. v. FERC,

758 F.2d 669, 674 (D.C. Cir. 1985) (cleaned up; citation omitted).

<u>Analysis</u>

Defendants argue that they have satisfied all four factors, so the Court should exercise its discretion to stay this litigation.  <u>See</u> Mot. to Stay at 8.  Plaintiffs, naturally, disagree on all counts.  <u>See</u> Opp'n at 8.  The Court will address the factors in turn.

## I.      Presentation of a Serious Legal Question

Defendants do not argue that they are likely to succeed on the merits of their petition, <u>see</u> Mot. to Stay at 8; instead, they contend that the petition "will present serious legal questions" regarding the Court's jurisdiction over "agency or instrumentality defendants[] when the sovereign . . . is immune" and "the role of international comity" in proceedings under the FSIA, <u>id.</u> at 8–9.  Defendants also assert that "there is a high likelihood certiorari will be granted" because the Supreme Court has granted certiorari regarding "two recent D.C. Circuit[] decisions" addressing claimants' failure to exhaust domestic remedies as a ground for abstention.  Reply Br. in Supp. of Mot. to Stay [ECF No. 204] ("Reply") at 2 (cleaned up); <u>see</u> <u>Philipp v. Federal Republic of Germany</u>, 894 F.3d 406 (D.C. Cir. 2018), <u>vacated</u>, 141 S. Ct. 703 (2021), and <u>Simon v. Republic of Hungary</u>, 812 F.3d 127 (D.C. Cir. 2016), <u>abrogated by</u> <u>Fed. Republic of Germany v. Philipp</u>, 141 S. Ct. 703 (2021).  In both <u>Philipp</u> and <u>Simon</u>, the Supreme Court called for the views of the Solicitor General, who recommended granting certiorari on the exhaustion issue.  Reply at 2–3; <u>see</u> Br. for United States as Amicus Curiae at 1, 30–34, <u>Fed. Republic of Germany v. Philipp</u>, No. 19-351 (Sept. 11, 2020); Br. for United States as Amicus Curiae at 1, 25–27, <u>Republic of Hungary v. Simon</u>, No. 18-1447 (May 26, 2020).  Although the Supreme Court ultimately did not pass on the exhaustion issue, defendants argue that the Solicitor General's involvement in <u>Philipp</u> and <u>Simon</u> "confirms this is a serious legal question," and that the likely involvement of the Solicitor

General in this case "increases likelihood that certiorari will be granted" here.  Reply at 3, 6–7.

Even assuming that defendants are correct about the seriousness of the legal issues they will present, the Court concludes that a stay is not warranted at this time.  Where the party seeking a stay does not argue that it has a "high probability of success on the merits," some courts observe that a stay may nevertheless be appropriate if the petition presents a "serious legal question"—but only "so long as the other factors strongly favor a stay."  Loving, 920 F. Supp. 2d at 110 (citation omitted); see also In re Special Proc., 840 F. Supp. 2d 370, 372 (D.D.C. 2012) ("It is only when the other three factors tip sharply in the movant's favor that the standard for success on the merits changes.").  Indeed, some judges in this District have reasoned that "[a] showing of irreparable harm is crucial" in order for the court to issue a stay, and "[f]or harm to be 'irreparable' . . . the injury must be both certain and great."  Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc., 241 F. Supp. 3d 91, 97 (D.D.C. 2017) (first alteration in original) (quoting Fed. Trade Comm'n v. Church & Dwight Co., Inc., 756 F. Supp. 2d 81, 86 (D.D.C. 2010)).  Accordingly, the Court will move on to assess whether defendants are likely to face irreparable harm if a stay is not imposed.

## II.    Likelihood of Irreparable Harm to Defendants

Defendants first argue that they will be irreparably harmed if they are forced to "face judicial proceedings before a district court that might not have jurisdiction."  Mot. to Stay at 14.  They note that the rights of a party entitled to sovereign immunity are "irretrievably lost" if that party is forced to litigate, id. (quoting Richardson-Merrill, Inc. v. Koller, 472 U.S. 424, 431 (1985)), a loss that defendants assert is "beyond remediation and is the essence of irreparable injury," id.  That argument has considerably less force here, given that the litigation has been ongoing for twelve years already.  Moreover, defendants do not intend to seek certiorari on the

question whether MNV—an agency or instrumentality of Hungary—is entitled to sovereign immunity, nor will they contend that Hungary—an immune sovereign—remains a party in this action.  Instead, defendants report that they plan to present two issues unrelated to the sovereign immunity of any party presently litigating before this Court:  whether this case may continue without Hungary's participation, and whether this Court may consider the defense of international comity.  See id.; Opp'n at 14 (explaining that this Court and the D.C. Circuit "have held definitively" that the remaining defendants "are not immune from jurisdiction," and that the petition, "even if granted, will not change those conclusions and grant Defendants immunity").  Thus, there is no defendant in this suit facing the irreparable injury of being forced to litigate despite being entitled to sovereign immunity.

Defendants instead assert that, because the remaining defendants do not own the paintings that are the subject of this litigation, "injunctive relief cannot be fashioned here that would affect 'only the remaining defendants, and not [the immune sovereign].'"  Reply at 4 (alteration in original) (quoting Broidy Cap. Mgmt., LLC v. Qatar, No. CV 18-2421-JFW(Ex), 2018 WL 6074570, at *10 (C.D. Cal. Aug. 8, 2018)), aff'd, 982 F.3d 582 (9th Cir. 2020).  Thus, because any relief awarded by the Court would come from the immune Hungary, rather than "the non-immune defendants who do not own the property and lack independent budgets," id., Hungary's interests are still implicated.  But this purported injury is premised on a legal theory—that the remaining defendants cannot adequately defend Hungary's interests—which the D.C. Circuit has conclusively rejected.  See de Csepel IV, 27 F.4th at 750 (concluding that Hungary's sovereign interests "are so aligned with those of the remaining defendants that the latter will vigorously protect Hungary's interests by pressing their own"); id. at 752 (concluding that "alternative forms of relief," such as monetary damages or declaratory judgment, are "available here" to "mitigate"

any prejudice to Hungary (citation omitted)).  If litigation continues in this Court, there is no threat that Hungary will be forced to defend its interests and effectively lose the protection of its sovereign immunity, and there is no argument that any of the defendants presently litigating before this Court are entitled to sovereign immunity.  Accordingly, at present there is no likelihood of irreparable harm on the basis of sovereign immunity.

Defendants also contend that proceedings in this Court "will be unnecessary or, at the very least, significantly narrowed" if the Supreme Court grants their petition for certiorari <u>and</u> rules in their favor.  Mot. to Stay at 14.  This is true, but it is highly speculative.  <u>See</u> <u>Boehringer Ingelheim Pharms.</u>, 241 F. Supp. 3d at 97 ("For harm to be irreparable . . . the injury must be both <u>certain</u> and great." (emphasis added) (citation omitted).  The harm that defendants assert is, at present, theoretical.  <u>See</u> <u>Loving</u>, 920 F. Supp. 2d at 111.  If further developments occur—and particularly if the Supreme Court grants defendants' petition—the Court's calculus would certainly change because the parties would face different burdens and potential harms than they face at the present juncture.  Were the Supreme Court to grant certiorari, the Court would entertain a renewed motion seeking a stay.  <u>Cf.</u> <u>Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.</u>, 185 F. Supp. 3d 233, 250 (D.D.C. 2016) (explaining that the court "may reconsider" staying case "should the Solicitor General recommend granting certiorari").  But absent such a change in status, the Court concludes that denying the motion to stay will not cause harm—let alone irreparable harm—to defendants.

### III.    Possibility of Harm to Plaintiffs

Defendants next assert that plaintiffs "will suffer no meaningful harm from a short stay" while the Supreme Court considers defendants' petition.  Mot. to Stay at 15.  Plaintiffs, defendants contend, are "successors-in-interest, a generation or two removed from the siblings alleged to have

suffered the property loss"; this litigation "will be based on documentary evidence and expert reports," rather than live witness testimony, so a stay presents no risk of lost evidence; and plaintiffs "waited to file this suit until seventy years after the end of World War II, even though [they] knew of the artworks' location all of that time." Id.; see also Philipp v. Fed. Republic of Ger., 436 F. Supp. 3d 61, 68–69 (D.D.C. 2020) (granting motion to stay pending petition for certiorari based in part on similar considerations). Thus, a "few months" of waiting will not prejudice plaintiffs. Mot. to Stay at 15.

Plaintiffs vigorously dispute this assessment, which they claim "wholly ignores the reality of the Communist era in Hungary" and plaintiffs' previous attempts to recover the artworks through legal processes in Hungary. Opp'n at 15–16 & n.8. Because of their advanced ages (Angela and Julia Herzog are 89 and 84 years old, respectively), the already-lengthy history of this litigation, and the possible length of time necessary for the Supreme Court's consideration, plaintiffs assert that a stay would certainly cause them harm. Id. at 16–17. In response, defendants point out that plaintiffs requested a stay pending their petition for certiorari in August 2018; moreover, that stay request came in even more prejudicial circumstances, since the parties had already briefed a motion to dismiss and had to file supplemental briefings after plaintiffs' petition was denied. Reply at 5. Thus, defendants argue, "staying activity now, before the parties expend significant time and resources" briefing motions in this Court, would eliminate the possible need for supplemental briefing should the Supreme Court grant defendants' petition. Id.

The Court acknowledges, and to some extent shares, plaintiffs' interest in moving this case forward. But the central harm plaintiffs claim they will suffer—an increase in the overall length of this litigation—"relies heavily on delay that predates and is unrelated to the filing of th[e present] petition for certiorari and[,] as such, . . . does not demonstrate harm attributable to a stay while the

Supreme Court decides on" the anticipated petition.  <u>Philipp</u>, 436 F. Supp. 3d at 69.  Plaintiffs do

not argue that their litigation position will be weakened—as by the loss of evidence or a potentially

avoidable expenditure of funds—if the matter is stayed.  <u>Cf.</u> <u>id.</u>; <u>Loving</u>, 920 F. Supp. 2d at 111–

12 (denying motion stay in part because granting it would require plaintiffs to face a "Hobson's

choice" of expending time and money on potentially unnecessary compliance with order or risking

the loss of professional licensure).  Thus, although the Court is sympathetic to plaintiffs' position,

this factor weighs only slightly against granting defendants' motion and staying this litigation.

## IV.    Public Interest

Finally, defendants argue that the public interest is best served by staying this case to ensure

that "foreign sovereigns are not inappropriately subject to suit in the United States" and because

denying the stay would "hamper" that important goal.  Mot. to Stay at 13.  Plaintiffs again point

out that defendants have not expressed an intent to appeal the D.C. Circuit's conclusion that none

of the remaining defendants is entitled to sovereign immunity.  <u>See</u> Opp'n at 17.  And the Court,

once again, agrees with plaintiffs:  only Hungary—now a non-party—is entitled to sovereign

immunity, and requiring the Museums and MNV to litigate during the pendency of their petition

will not threaten Hungary's sovereign immunity.  Although defendants rely on Judge Kollar-

Kotelly's decision to stay proceedings during the pendency of a petition for certiorari in <u>Philipp</u>,

<u>see</u> Mot. to Stay at 17–18, the petition in that case <u>did</u> address a foreign sovereign's immunity

from suit, <u>see</u> <u>Philipp</u>, 436 F. Supp. 3d at 69; Opp'n at 18.  Even then, however, Judge Kollar-

Kotelly concluded that the public interest in preserving sovereign immunity stood "in equipoise"

with the public interest in "prompt resolution of claims stemming from Holocaust-era crimes,

including confiscation of art." <u>Philipp</u>, 436 F. Supp. 3d at 69–70.  Here, there is no concern that a

sovereign might be stripped of its immunity, but the same public policy supporting prompt

resolution of Holocaust-related claims is present.  Accordingly, the public interest factor weighs against staying this litigation.

## <u>Conclusion</u>

In sum, although defendants' anticipated petition for certiorari may well present serious legal questions, the remaining factors—the likelihood of irreparable harm to defendants, the possibility of harm to plaintiffs, and the public interest—do not favor staying litigation at this juncture.  As noted above, however, these considerations may change should the Supreme Court grant defendants' petition.  Therefore, upon consideration of [199] defendants' motion to stay, and the entire record herein, it is hereby

**ORDERED** that [199] defendants' motion to stay is **DENIED**.

**SO ORDERED.**

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>August 1, 2022</u>