**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID L. de CSEPEL, *et al.*,<br>*Plaintiffs*,<br>v.<br>REPUBLIC OF HUNGARY, *et al.*,<br>*Defendants*. | Case No. 1:10-cv-01261-JDB |

**UNITED STATES' NOTICE OF INTERVENTION**

The United States hereby submits this Notice to advise the Court that the United States will participate in these proceedings to defend the constitutionality of the Holocaust Expropriated Art Recovery Act, as amended in 2025, *see* Pub. L. No. 119-82 & 22 U.S.C. § 1621 note (the "HEAR Act"). *Id.* The United States' memorandum of law in support of the HEAR Act's constitutionality is below.

The United States has a statutory right to intervene in any federal court action in which "the constitutionality of any Act of Congress affecting the public interest is drawn in question." *See* 28 U.S.C. § 2403(a).

Dated: October 6, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 514-6304
Email: joshua.n.schopf@usdoj.gov

*Counsel for the United States of America*

## TABLE OF CONTENTS

STATUTORY BACKGROUND........................................................................ 3

PROCEDURAL BACKGROUND.................................................................... 4

DISCUSSION .............................................................................................. 6

I. The HEAR ACT Does Not Violate the Due Process Clause ..................... 6

II. The HEAR ACT Does Not Violate Article III or Impinge on the Separation of Powers ................................................................... 8

III. The HEAR Act Applies Extraterritorially............................................... 12

CONCLUSION........................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. 412 (2023) .......... 12, 13

**Bank Markazi v. Peterson*,
578 U.S. 212 (2016) .......... 2, 9, 10, 11

*Cassirer v. Thyssen-Bornemisza Foundation*,
89 F.4th 1226 (9th Cir. 2024) .......... 3

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991) .......... 12

**Federal Republic of Germany v. Philipp*,
592 U.S. 169 (2021) .......... 4, 5, 14, 15

*Friends of the Earth v. Haaland*,
No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023) .......... 11

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
582 F.3d 393 (2nd Cir. 2009) .......... 6

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) .......... 6

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) .......... 7

*Kiobel v. Royal Dutch Petrol. Co.*,
569 U.S. 108 (2013) .......... 13

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .......... 7

*Mondou v. New York, N.H. & H.R. Co.*,
223 U.S. 1 (1912) .......... 7

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) .......... 12

*Munn v. Illinois*,
94 U.S. 113 (1876) .......... 7

*Nestle USA, Inc. v. Doe*,
593 U.S. 628 (2021) .......... 13

**Patchak v. Zinke*,
583 U.S. 244 (2018) ... 11

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995) ... 8

**RJR Nabisco v. Eur. Cmty.*,
579 U.S. 325 (2016) ... 12, 13, 16

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.,*
899 F.3d 1064 (9th Cir. 2018) ... 14

*Silsbury v. McCoon*,
3 N.Y. 379 (1850) ... 8

*Silver v. Silver*,
280 U.S. 117 (1929) ... 7

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
411 F.3d 296 (D.C. Cir. 2005) ... 6

*United States v. Bennett*,
232 U.S. 299 (1914) ... 6

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
897 F.3d 1141 (9th Cir. 2018) ... 3

*W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
493 U.S. 400 (1990) ... 14

*Zuckerman v Metropolitan Museum of Art*,
928 F.3d 186 (2d Cir. 2019) ... 3

**STATUTES**

22 U.S.C. § 1621 note ... 1, 14

22 U.S.C. § 8772(b) ... 10

28 U.S.C. § 2403(a) ... 1

HEAR Act of 2016,
Pub. L. No. 114–308, 130 Stat. 1524 (2016) ... 3, 9

Holocaust Expropriated Art Recovery Act of 2025,
Pub. L. No. 119-82, 140 Stat. 752 ... *passim*

Holocaust Victims Redress Act,
Pub. L. No. 105–158, 112 Stat. 15 (1998) ... 3, 15

**RULES**

Federal Rule of Civil Procedure 5.1 ........................................................................................ 5

**<u>MEMORANDUM OF LAW IN SUPPORT OF THE CONSTITUTIONALITY OF THE HEAR ACT</u>**

It is the foreign policy of the United States, reflected in many acts of Congress and actions of the Executive Branch going back decades, to support the efforts of victims of Nazi Germany and their descendants and heirs to pursue claims for the recovery of looted artwork. As part of that foreign policy, Congress enacted and President Trump signed the Holocaust Expropriated Art Recovery Act of 2025, Pub. L. No. 119-82, 140 Stat. 752, 22 U.S.C. § 1621 note (the "HEAR Act"). The HEAR Act recognized that the United States' foreign policy of "permit[ting] claims to recover Nazi-looted art to be brought" had been "frustrated" by court rulings applying "defenses based on the passage of time" and "other non-merits discretionary defenses," and that "[i]n order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded." *Id.* § 2(8).

This long-running case is one of the cases Congress had in mind, in which the application of non-merits defenses to preclude plaintiffs' pursuit of recovery claims had frustrated American foreign policy. Plaintiffs David De Csepel, Angela Maria Herzog and Julia Alice Herzog claim that the Nazi regime, in collaboration with Hungarian officials, looted a collection of artworks ("the Herzog Collection") from their predecessors. The Herzog Collection is now on display in Defendants' museums in Budapest, Hungary. Plaintiffs claim that the Defendants lack good title to the Herzog Collection because their claims ultimately derive from the Nazis' wrongful looting. Further, Plaintiffs argue that any defenses Defendants maintain under the FSIA or based on related jurisdictional defenses are now abrogated by the HEAR Act.

Yet Defendant argues that the HEAR Act, and its application to this case, are unconstitutional. Defendant asserts that the HEAR Act violates the Due Process Clause, the separation of powers, and the presumption against extraterritoriality. The Court should reject these

meritless arguments and apply the HEAR Act to allow Plaintiffs, at long last, to have their day in court to argue the substance of their claim.

*First*, the HEAR Act comports with the Due Process Clause. Defendant argues that it would violate the Due Process Clause to apply the HEAR Act to Defendants' conduct in Hungary, and would deprive Defendants of property interests in the Herzog Collection. To the contrary, the HEAR Act would merely allow Plaintiffs to pursue their legal claims that they rightfully own the Herzog Collection. The Supreme Court has long held that the legislature, consistent with Due Process, can alter the law that applies to legal claims.

*Second*, the HEAR Act does not intrude on the judicial role in violation of Article III and the separation of powers. Defendants argue that Congress intruded on the province of the judiciary by removing all defenses and pre-ordaining the outcome of this case, regardless of the facts. But the HEAR Act did something far more modest by precluding reliance on certain specified defenses. Plaintiffs still must prove the merits of their claims, and Defendants can rely on any defenses not precluded by the HEAR Act. Defendants reveal the weakness of their position by relying on the *dissent* in *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), when the *majority* held that Congress can enact statutes that apply new rules to pending lawsuits, even if those statutes alter the outcome.

*Finally*, applying the HEAR Act to Defendants' possession of the Herzog Collection in Hungary does not violate the presumption against extraterritoriality because Congress clearly manifested its intent for the statute to apply extraterritorially. Among other things, Congress specifically included cases involving claims of Nazi-looted art housed in foreign countries, and precluded foreign law defenses and doctrines that, by their nature, apply to conduct occurring extraterritorially.

**STATUTORY BACKGROUND**

In 2016, Congress first passed the Holocaust Expropriated Art Recovery Act to overcome state statute of limitation defenses raised in response to lawsuits seeking restitution of art expropriated or stolen from original owners during the Holocaust. The HEAR Act reflects the latest in a decades-long bipartisan "sense of Congress that 'all governments should undertake good faith efforts to facilitate the return of private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner.'" *See* HEAR Act of 2016 § 2(4), Pub. L. No. 114–308, 130 Stat. 1524 (2016) (quoting the Holocaust Victims Redress Act § 202, Pub. L. No. 105–158, 112 Stat. 15 (1998)). The HEAR Act allows for claims to proceed for up to six years after a claimant had actual knowledge of the identity, location, and right to a possessory interest in the art. *Id.* § 5(a)(1) & (2). The 2016 Act also had a sunset clause of January 1, 2027.

The HEAR Act of 2025 was passed on April 14, 2026. In addition to eliminating the sunset date, the Act is designed to remove certain procedural barriers for plaintiffs seeking restitution of their artwork, primarily through eliminating several defenses used regularly by defendants in these cases. As the Act's findings note, "the intent of this Act is to permit claims to recover Nazi-looted art to be brought, notwithstanding the passage of time since World War II. Some courts have frustrated the intent of this Act by dismissing recovery lawsuits in reliance on defenses based on the passage of time, such as laches (for example, *Zuckerman v Metropolitan Museum of Art*, 928 F.3d 186 (2d Cir. 2019)) or adverse possession, acquisitive prescription, or usucapion for example, *Cassirer v. Thyssen-Bornemisza Foundation*, 89 F.4th 1226 (9th Cir. 2024)) or on other non-merits discretionary defenses, such as the act of state doctrine (for example, *Von Saher v. Norton Simon*

*Museum of Art at Pasadena*, 897 F.3d 1141 (9th Cir. 2018)), forum non conveniens, international comity, or prudential exhaustion. In order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded." HEAR Act § 2(8); *see also id.* § 5(f) (barring same defenses discussed in findings). The Act also states that that it is intended to allow claims to recover artwork "notwithstanding the 'domestic takings' rule under *Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021)." *Id.* § (2)(9); *see also* § 5(b) ("Notwithstanding any other law or prior judicial decision, any civil claim or cause of action covered by subsection (a) shall be deemed to be an action in which rights in violation of international law are in issue for purposes of section 1605(a)(3) of title 28, United States Code, without regard to the nationality or citizenship of the alleged victim.").

## PROCEDURAL BACKGROUND

This case involves a long-running dispute over the ownership of an art collection known as the Herzog Collection. In 2010, Plaintiffs brought claims in this Court to recover the collection from Defendants, Hungary and various Hungarian art and academic institutions. Compl., ECF No. 1. Since then, "'courts have decided several motions to dismiss, some defendants have been dismissed and others have been added, [and] the case has been up to the Court of Appeals three times.'" Case No. 24-7045, ECF No. 2155630 at 4.

In April 2021, after the third appeal of this matter, the Supreme Court issued its *Federal Republic of Germany v. Philipp* decision, 592 U.S. 169 (2021), holding that the FISA's expropriation exception covered takings in violation of the "international law of expropriation," but not takings in violation of the international law of "human rights" or of "genocide." *Philipp*, 592 U.S. at 180. The Court further explained that "[c]laims concerning Nazi-era art takings could be brought under the expropriation exception where the claims involve the taking of a *foreign*

national's property." *Id.* at 185. But otherwise, the FSIA's expropriation exception, which "refers to violations of the international law of expropriation . . . incorporates the domestic takings rule." *Id.* at 187.

After the *Phillips* ruling, Defendants moved to dismiss Plaintiffs' claims concerning a portion of the Herzog Collection, arguing that Hungary's seizure of its citizens' property did not violate the international law of expropriation under the domestic takings rule. Defs.' Mot. to Dismiss, ECF No. 210. Plaintiffs argued that as German Nazis were involved in the takings, their claims remained viable. Nonetheless, the district court granted Defendants' motion to dismiss and on January 23, 2026, the D.C. Circuit affirmed. On February 23, 2026 Plaintiffs filed a petition for rehearing en banc. Case No. 24-7045, ECF No. 2160544. While that petition remained pending, Congress passed the 2025 HEAR Act. Thus, on April 15, 2026, Plaintiffs filed a motion to vacate and remand the D.C. Circuit's panel decision. *Id.* at 2168884**.**

In response, on May 18, 2026, Defendants filed a Notice of Constitutional Challenge under Federal Rule of Civil Procedure 5.1 ("Rule 5.1 Notice"). *See id.*, ECF No. 2173957. Defendants explained that their response to Plaintiffs' Motion to Vacate challenges the constitutionality of the HEAR Act. In that response, Defendant argues that the HEAR Act (1) violates due process; (2) violates Article III's separation of powers; and (3) does not overcome the presumption against extraterritoriality. *See id.,* ECF No. 2173948. On July 24, 2026, the D.C. Circuit remanded the case to the district court to, among other things, address the HEAR Act issues. *See id.,* ECF No. 2184986. On August 7, 2026, the United States filed an Acknowledgment of Constitutional Participation and Notice of Potential Participation. ECF No. 256. The United States now formally intervenes to address the constitutionality of the HEAR Act.

## DISCUSSION

### I. The HEAR ACT Does Not Violate the Due Process Clause

Defendant claims that application of the HEAR Act to this lawsuit would violate the Due Process Clause. As an initial matter, it is not clear whether Defendants, as either a foreign state or as an agency or instrumentality of a foreign state, are "person[s]" within the scope of the Due Process Clause. *See TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2nd Cir. 2009). Assuming that the Due Process Clause applies to Defendants, the HEAR Act does not violate any of Defendant's rights under that clause.

**1.** Defendant argues that applying the HEAR Act extraterritorially[1] to its conduct in Hungary would cause constitutional concerns. *See* Case No. 24-7045, ECF No. 2173948 at 6-10. Yet as the Supreme Court recently recognized, "[t]he Constitution confers upon the Federal Government—and it alone—both nationwide and extraterritorial authority. While 'the limitations of the Constitution are barriers bordering the States and preventing them from transcending the limits of their authority,' there is no equivalent 'ground for constructing an imaginary constitutional barrier around the exterior confines of the United States for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty.'" *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 15 (2025) (quoting *United States v. Bennett*, 232 U.S. 299, 306 (1914)).

**2.** Further, Defendant argues that application of the HEAR Act would violate the Due Process Clause by depriving it of vested property rights in the Herzog Collection. *See* Case No. 24-7045, ECF No. 2173948 at 11-14. Not so. The merits question in this case is who owns

---

[1] As described below, the HEAR Act applies extraterritorially. *See infra*, Part III.

the Herzog Collection, Plaintiffs or Defendants. The HEAR Act merely precludes Defendants from relying on defenses that Congress deemed to be "non-merits defenses," *see* HEAR Act § 2(a)(1)(B), in order to prevent Plaintiffs from pressing their claim that they have property rights in the Herzog Collection.

Courts have repeatedly rejected the notion that a litigant has a vested property interest in the continued application of a rule of law. As the Supreme Court held more than a century ago, "[a] person has no property, no vested interest, in any rule of the common law. . . . [T]he law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless prevented by constitutional limitations." *Mondou v. New York, N.H. & H.R. Co.*, 223 U.S. 1, 50 (1912) (quoting *Munn v. Illinois*, 94 U.S. 113, 134 (1876)); *see also Silver v. Silver*, 280 U.S. 117, 122 (1929) ("the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object"); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (when legislature changes the legal rules applicable to a pending case, "the legislative determination provides all the process that is due") (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 423 (1982)). Similarly, the HEAR Act did not violate the Due Process Clause by changing the law applicable to lawsuits seeking the recovery of art looted by Nazis.

Defendants claim a constitutional right to invoke "substantive provisions of Hungarian property law." Case No. 24-7045, ECF No. 2173948 at 14. But the Court should reject the notion that the U.S. Constitution requires the application of any foreign law doctrine that is inconsistent with bedrock principles of Anglo-American jurisprudence, such as the doctrines of acquisitive prescription or usucapion.

A bedrock principle of American common law, derived from the British common law tradition, is that a thief cannot convey good title, even to a good faith purchaser. For example, the New York Court of Appeals held in 1850 that "[i]t is an elementary principle in the law of all civilized communities, that no man can be deprived of his property, except by his own voluntary act, or by operation of law." *Silsbury v. McCoon*, 3 N.Y. 379, 381 (1850). Thus, "[t]he thief who steals a chattel . . . acquires no title by such wrongful taking," and "if the wrongdoer sell the chattel to an honest purchaser having no notice of the fraud by which it was acquired, the purchaser obtains no title from the trespasser, because the trespasser had none to give." *Id.* at 381, 383-84. The court derived these principles in part from such venerable sources as Bracton on Laws and Customs of England and Blackstone's Commentaries. *Id.* at 388-89. Ordinary choice-of-law disputes do not rise to the level of a constitutional concern. It would be especially inappropriate to read the Due Process Clause to constitutionalize the application of foreign law litigation defenses that fundamentally conflict with the American common law tradition.

## II. The HEAR ACT Does Not Violate Article III or Impinge on the Separation of Powers

Defendant argues that the HEAR Act violates Article III and the separation of powers, asserting that the Act "cannot be allowed to dictate outcomes regardless of the facts." Case No. 24-7045, ECF No. 2173948 at 15. The Supreme Court has made clear that although Congress may not direct courts to reinstate cases that have reached final judgment, it can change the law and apply the new law to pending cases. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225-27 (1995). Defendant's argument both mischaracterizes the HEAR Act and Congress's ability to modify substantive rules and apply them to pending cases.

Turn first to the HEAR Act. The HEAR Act clarifies that certain defenses used by litigants to shield them from liability are unavailable and applies that rule to all suits involving

artwork or other property lost because of Nazi persecution from 1933 through 1945, including those pending and even if those defenses were already used by a defendant. *See* HEAR Act § 2(a)(3)(G); HEAR Act of 2016 § 5(a). But application of the HEAR Act need not, by itself, determine the outcome of any particular case; it merely precludes reliance on certain defenses. In any lawsuit covered by the HEAR Act, the plaintiffs still must establish the elements of their cause of action, and the defendants may rely on any defenses not precluded from the HEAR Act. To the extent that genuine disputes of material fact exist, the factfinder must resolve those disputes.

Even if the HEAR Act did effectively "dictate" the outcome of this case or other covered cases, that would not violate Article III or the Separation of Powers. Defendant cites the *dissent* in *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), to support the argument that the HEAR ACT runs afoul of the separation of powers doctrine. 24-7045, ECF No. 2173948 at 15. But Defendant ignores the holding of the *majority* in *Bank Markazi*, which rejected the dissent's arguments and concluded that application of outcome-altering legislation to a pending case did not violate the separation of powers.

In *Bank Markazi*, the Court addressed whether provisions of the Iran-Threat Reduction and Syria Human Rights Act of 2012 violated the separation of powers. The statutory section at issue, section 8772, makes a designated set of assets held at Bank Markazi available for post-judgment execution. The assets would help satisfy judgments in numerous actions by victims of Iranian-sponsored terrorist acts. *Bank Markazi*, 578 U.S. at 215. These victims sought to enforce their judgments by forcing turnover of approximately $1.75 billion in bond assets owned by Markazi. *Id.* at 221. Section 8772 identified as available for execution of judgments "'the financial assets that are identified in and the subject of proceedings in the United States District

Court for the Southern District of New York in *Peterson et al. v. Islamic Republic of Iran et al.*, Case No. 10 Civ. 4518(BSJ)(GWG), that were restrained by restraining notices and levies secured by the plaintiffs in those proceedings.'" *Id.* at 218 (quoting 22 U.S.C. § 8772(b)).

The Markazi assets were among those identified in the district court proceeding. Markazi argued that Section 8772 violated the separation of powers because Congress was effectively dictating "specific factual findings in connection with a specific litigation—invading the province of the courts," *id.* (citation omitted), and "compelling the courts to reach a predetermined result in this case." *Id.*

The Second Circuit rejected Markazi's arguments, and the Supreme Court affirmed. The Court noted that "Congress may indeed direct courts to apply newly enacted, outcome-altering legislation in pending civil cases." *Id.* at 229. And a "statute does not impinge on judicial power when it directs courts to apply a new legal standard to undisputed facts." *Id.* at 230. The Court found that Section 8772 "provide[d] a new standard clarifying, that if Iran owns certain assets, the victims of Iran-sponsored terrorist attacks will be permitted to execute against those assets. Applying laws implementing Congress' policy judgments, with fidelity to those judgments, is commonplace for the Judiciary." *Id.* at 232. And the Court further noted that Section 8772 "is an exercise of congressional authority regarding foreign affairs, a domain in which the controlling role of the political branches is both necessary and proper." *Id.* at 234. In such a setting, "Congress and the President have, time and again, as exigencies arose, exercised control over claims against foreign states and the disposition of foreign-state property in the United States." *Id.* Such "measures have never been rejected as invasions upon the Article III judicial power." *Id.*

In *Patchak v. Zinke*, 583 U.S. 244, 250 (2018), the Court reaffirmed that Congress could enact outcome-altering legislation that applied to pending cases, holding "that the legislative power is the power to make law, and Congress can make laws that apply retroactively to pending lawsuits, even when it effectively ensures that one side wins." That case involved a dispute over whether the Department of the Interior could take into trust a property on behalf of an Indian Tribe. *Id.* at 246. While the case was pending, Congress enacted a law directing that suits related to the land at issue "'shall not be filed or maintained in a Federal court and shall be promptly dismissed.'" *Id.* Petitioner argued that this law "impermissibly infringed the judicial power that Article III of the Constitution vests exclusively in the Judicial Branch." *Id.* The Court noted that "Article III does not prohibit Congress from enacting new laws that apply to pending civil cases." *Id.* at 258. When Congress enacts such a law that "governs pending cases, Article III does not prevent courts from applying it because 'each court, at every level, must 'decide according to existing laws.'" *Id.* Because the statute at issue "references 'pending' cases" and because Petitioner's "suit is not final, applying [the statute] does not offend Article III." *Id.*

As with the statutes at issue in *Markazi* and *Patchak*, the HEAR Act does not infringe on the judicial power. Congress is entitled through the HEAR Act to enact a new law that applies to "pending civil cases," *Patchak*, 583 U.S. at 258, such as this one, even if the HEAR Act prevents Defendants from asserting defenses it previously asserted and even if the HEAR Act is "outcome-altering." *Markazi*, 578 U.S. at 229. As the underlying litigation remains ongoing, and no final outcome has been reached, the HEAR Act "does not offend Article III." *Patchak*, 583 U.S. at 258; *see also Friends of the Earth v. Haaland*, No. 22-5036, 2023 WL 3144203 * 2 (D.C. Cir. Apr. 28, 2023) (citing *Patchak,* 583 U.S. at 250-51, and *Markazi,* 578 U.S. at 229*)*.

## III. The HEAR Act Applies Extraterritorially

Defendants invoke the presumption against extraterritoriality to argue that the HEAR Act cannot be construed to apply extraterritorially to their conduct in Hungary. *See* 24-7045, ECF No. 2173948 at 6-10. Yet Congress made abundantly clear, in several provisions of the HEAR Act, that it intended the statute to apply extraterritorially to cases involving the possession of Nazi-looted art in foreign countries. The HEAR Act's clear manifestation of intent to apply extraterritorially overcomes the presumption.

A "longstanding principle of American law" is that legislation enacted by Congress "is meant to apply only within the territorial jurisdiction of the United States." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023). This principle is embodied in the presumption against extraterritoriality—namely, that "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). The Supreme Court has also recognized, however, that "Congress has the authority to enforce its laws beyond the traditional boundaries of the United States." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*").

To analyze extraterritoriality issues, the Supreme Court has adopted "a two-step framework." *RJR Nabisco*, 579 U.S. at 337. Courts must first ask "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* That question is "a matter of statutory construction." *Aramco*, 499 U.S. at 248. If Congress "has affirmatively and unmistakably instructed that [a] statute" is meant to apply extraterritorially, the statute so applies and the presumption has been rebutted. *Id.* To identify any such instruction, the Supreme Court has examined the statutory text, *see, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 262–63 (2010), as well as a statute's context, *see id.* at 265 ("Assuredly, context can be consulted

as well.”). “[A]n express statement of extra territoriality is not essential” for a statute to apply extraterritorially. *RJR Nabisco*, 579 U.S. at 340; *see also Kiobel v. Royal Dutch Petrol. Co.*, 569 U.S. 108, 117 (2013) (asking whether Congress “intends federal law to apply to conduct occurring abroad”).

Only if at step one the statute is not extraterritorial, do courts “move to step two, which resolves whether the suit seeks a (permissible) domestic or (impermissible) foreign application of the provision.” *Abitron*, 600 U.S. at 418. The court must first identify the “focus of congressional concern underlying the provision at issue,” *id.*, and then “ask whether the conduct relevant to that focus occurred in United States territory,” *id.* (citation modified). To prove that a claim involves a domestic application of a statute, a plaintiff “must establish that the conduct relevant to the statute’s focus occurred in the United States.” *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 633 (2021) (citation omitted).

Here, it is not necessary to progress to step two, because the HEAR Act clearly manifests Congress’s intent that the law apply extraterritorially. For instance, Congress particularly noted application of “acquisitive prescription, or usucapion,” which are foreign law concepts, and stated that “to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded.” HEAR Act, § 2(a).

Defendant maintains that such defenses are applicable here because Defendants are foreign entities and the expropriated art at issue is located in Hungary. But the HEAR Act could not have been clearer in its intent to preclude reliance on such defenses.

Such defenses would only need to be abrogated if the HEAR Act applies extraterritorially. The Act also eliminates the “act of state doctrine” in cases involving Nazi expropriation of art. The act of state doctrine applies when a domestic court would be required

"to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990); *see also Sea Breeze Salt, Inc. v. Mitsubishi Corp.,* 899 F.3d 1064, 1067 (9th Cir. 2018) (noting that the "act of state doctrine limits judicial interference in foreign relations by precluding adjudication of the sovereign acts of other nations in United States courts."). "Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick*, 493 U.S. at 406.

Whether or not this particular doctrine applies in the instant matter, *see Philipp*, 592 U.S. at 179 (suggesting that the expropriation exception to sovereign immunity implies the unavailability of the act of state doctrine), the HEAR Act explicitly bars its use: "with respect to any claim that is otherwise timely under this Act- all non-merits discretionary bases for dismissal, including the act of state doctrine, international comity, forum non conveniens, prudential exhaustion, and similar doctrines unrelated to the merits, may not be applied with respect to the claim." 22 U.S.C. § 1621 note, § 2(8). Barring the act of state doctrine, along with similar defenses such as international comity, is another clear indication that the Act applies extraterritorially, since this is a doctrine that only has purchase with regard to the conduct "of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick*, 493 U.S. at 405.

Further, the Act's findings, incorporated into the original 2016 HEAR Act, reference multiple circumstances involving foreign events and governments, including as one example, the policies of the Holocaust Victims Redress Act ("HVRA"), which "expressed the sense of Congress that 'all governments should undertake good faith efforts to facilitate the return of private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof

that the claimant is the rightful owner." *Id.* at § 2(4). *See also id.* at § 3(1). The Act's reference to "*all governments*," indicates application beyond the United States.

Finally, the HEAR Act allows claims to recover artwork "notwithstanding the 'domestic takings' rule under Federal Republic of Germany v. Philipp, 592 U.S. 169 (2021)." *Id.* at § (2)(9); *see also id.* § 5(b). *Philipp* involved claims by the heirs of German Jewish art dealers against Germany seeking compensation for artwork that the Nazi regime allegedly expropriated in Germany. Germany argued that it was immune from suit under the FSIA as the heirs' claims did not fall within the FSIA's exception to sovereign immunity for property taken in violation of international law. *Phillip*, 592 U.S. at 176. This was because Germany maintained that a "foreign sovereign's taking of its own nationals' property remains a domestic affair." *Id.* "This 'domestic takings rule' assumes that what a country does to property belonging to its own citizens within its own borders is not the subject of international law." *Id.* The Supreme Court ultimately agreed with Germany, while noting that "[c]laims concerning Nazi-era art takings could be brought under the expropriation exception where the claims involve the taking of a *foreign* national's property." *Id.* at 185. But otherwise, the FSIA's expropriation exception, which "refers to violations of the international law of expropriation . . . incorporates the domestic takings rule." *Id.* at 187.

The HEAR Act would have no reason to state its intent to allow claims to recover artwork "notwithstanding the 'domestic takings' rule" in FSIA actions if Congress did not intend for the Act to apply extraterritorially as that rule applies only in cases involving foreign actors.

Thus, from both its language and context, the HEAR Act manifests a "clear, affirmative indication that it applies extraterritorially." *RJR Nabisco,* 579 U.S. at 337. The presumption against extraterritorially is therefore inapplicable.

## CONCLUSION

The Court should reject Defendants' constitutional challenge to the HEAR ACT for the reasons discussed above.

Dated: October 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

JEREMY S.B. NEWMAN
Chief Litigation Counsel
Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 514-6314
joshua.n.schopf@usdoj.gov

*Counsel for the United States of America*